53    477
203    ᵇ285
53    477
24 SC    50

## Craig *versus* Mayor, &c., of Allegheny *et al.*

1. Under the Internal Improvement Acts of February 25th and April 10th 1826, a grant of land to the Commonwealth for the use of the canal, is absolute and in perpetuity.

2. The acquisition of land by the Commonwealth by right of eminent domain is necessarily in fee and the alternative mode, by agreement with the owner, must be the same.

3. "Purchase" in the act applies to land for permanent use; "use and occupation" to that used temporarily in the construction of the works.

4. In the absence of qualification, the general intent of the law that the Commonwealth should acquire an absolute title should prevail, where the words of the instrument will carry a fee.

5. When the canal was abandoned, the land did not revert to the former owner; an absolute and perpetual estate in the land is neither revocable or reversionary.

APPEAL from the decree of the Court of Common Pleas of *Allegheny county.* In Equity.

This was a bill in equity, filed August 24th 1866, by Isaac Craig against The Mayor, &c., of Allegheny, Felix Rogers and others.

The bill set forth that William Robinson, about the year 1826, was the owner of certain lands in Allegheny Borough (now City); that he, with other owners of land executed a deed, reciting the Act of February 5th 1826, authorizing the canal commissioners to agree with the owners of land through which the Pennsylvania Canal was " intended to pass, for the purchase, use and occupation thereof on behalf of the state," and the supplemental Act of April 10th 1826, authorizing the canal commissioners " to call upon and receive from all and every person or persons, as far as conveniently can be done, who are the owners of land along or near the several proposed lines of communication between the eastern and western waters, acquittances or releases from any claim to damages, in case the said line of communication shall pass through their land, or for materials which may be taken to carry on the work."

The deed proceeded, " Now, therefore, in consideration of the benefits which will result to the community in general, and to us in particular, and also in consideration of the sum of $1, to us in hand paid, * * we hereby, for ourselves and heirs, give, grant, cede, and for ever transfer to the Commonwealth of Pennsylvania, for the purpose aforesaid, the privilege of taking and using all the waters and watercourses rising, flowing or passing through our land, and also all the lands belonging to us which shall be necessarily occupied by the site of the said canal (excepting therefrom ground for a basin); and also by the site of the towing-paths, feeders, aqueducts, spoil-banks and culverts connected therewith; and we do also hereby, for ourselves and our heirs, release and

[Craig *v*. Mayor, &c., of Allegheny.]

for ever acquit all claims for damages sustained or to be sustained by us in consequence of the site of the said canal passing through land, &c.,   *   *   and do also further hereby give and grant unto the said commissioners for the purpose of constructing and completing said canal, but for no other purpose, full power and authority to enter upon all lands, &c.,   *   *   and take therefrom stone, gravel, timber, limestone, and all other materials necessary to be used in the construction of the said canal, that may be found on said land, free of all costs and charges, as well for taking the same as for conveying the same through said land to the site of said canal," &c.

The bill further sets out that by virtue of the grant, the canal commissioners entered upon the lands, and constructed the canal over them; that part of Robinson's lands through which the canal passed was conveyed, on the 10th of August 1829, to Neville B. Craig in fee; and it was averred that he acquired title in fee to the part occupied by the canal, subject to the public easement upon and along the canal, and that Robinson conveyed other parts of his said lands to other persons—all the land so conveyed lying on the Allegheny river; that the Commonwealth in 1857 conveyed the canal to the Pennsylvania Railroad Company; that the complainant is owner in fee of the land conveyed by Robinson to Craig, and lessee for years of the other land conveyed by Robinson, as above mentioned, and occupies the front on the river as a wharf and moorage for rafts; that the part of the canal passing over his premises, from Robinson street to Allegheny river, has been disused for several years, and abandoned by the railroad company.

The bill then charges that, "The mayor, &c., of Allegheny, against the consent of complainant, and without lawful authority, propose and are proceeding permanently to appropriate the bed of said canal from Robinson street to the Allegheny river, and to build therein, along the centre of the canal, a large brick sewer, *   *   and at least the one-half of said sewer has been located and will be constructed upon the ground of complainant, to wit, that part of the bed of the abandoned canal lying westward of the centre-line of the canal. That the other defendants are contractors and agents of said corporation to build said sewer, and in the prosecution of said work said contractors and their servants have entered upon complainant's said land, and have made excavations therein, both in the bed of the canal and what was formerly the towing-path, and they threaten to make other excavations therein, and to build the said sewer upon the location aforesaid. That said sewer will so fill up and obstruct the bed of said canal as wholly to prevent the future use thereof for the purposes of a canal. That the mouth of said sewer will be at complainant's landing, and the discharges of water therefrom will render said

[Craig v. Mayor, &c., of Allegheny.]

landing an unsafe place for the moorage of rafts, and thereby complainant will suffer great damage in his business, and the value of his landing will be seriously and permanently impaired and lessened."

The bill prayed for an injunction to restrain the defendants from constructing the sewer, for a decree to restore the premises to their former condition and for general relief.

The defendants filed a general demurrer, and the court (September 1st 1866) dismissed the bill. This was the error assigned.

*Hamilton & Acheson*, for appellants, cited 3 Kent's Com. (5th ed.) 433; Angell on Highways, §§ 301–326, *et seq.*; Paul *v.* Carver, 2 Casey 223; Warner *v.* Southworth, 6 Conn. 471; Peck *v.* Smith, 1 Id. 103; Angell on Watercourses, § 10, *et seq.*; Haldeman *v.* Penna. Railroad, 14 Wright 425; Acts of February 25th 1826, §. 8, March 24th 1828, § 8, Pamph. L. 221; Commonwealth *v.* McAllister, 2 Watts 190; Act of May 16th 1857, § 5, Pamph. L. 522; Commonwealth *v.* Pitts. & Con. Railroad, 12 Harris 159; Mayor of Liverpool *v.* Chorley Waterworks Co., 21 Eng. Law & Eq. 620; 1 Eng. Railway Cases 101.

*M. A. Woodward*, for appellees, cited Haldeman *v.* Penna. Railroad, 14 Wright 436; Union Canal Co. *v.* Young, 1 Wh. 425; Acts of February 26th 1826 and April 9th 1827.

The opinion of the court was delivered, January 7th 1867, by

AGNEW, J.—The intention of the deed of grant and release from William Robinson, Jr., to the Commonwealth, is the pivot on which this case turns. The deed being founded upon the Acts of 25th February and 10th April 1826, providing for the construction of the Pennsylvania Canal, these laws furnish a proper key to the meaning of the parties to it. In Haldeman *v.* The Penna. Central Railroad Co., 14 Wright 425, it was determined that the land taken under the Act of 1826, for the permanent use of the canal, is held by the Commonwealth absolutely and in perpetuity. The Commonwealth being a corporation of the highest and most indestructible kind, her estate in the land is necessarily a fee simple. As noticed in the opinion then delivered, two kinds of occupation were plainly in view in the act; one permanent and continuing, and the other temporary and limited; the former of the land occupied by the canal and its necessary works, and the latter of that required to be used only during the period of construction.

The act contemplated, also, two modes of acquiring title; the first and preferable was by agreement for the purchase, use and occupation of the land; and the second, by a legal proceeding in case of disagreement or a legal incapacity of the owner. When

[Craig *v.* Mayor, &c., of Allegheny.]

property is taken for the permanent use of the canal, the title of the state is deemed to be an absolute perpetuity in the land itself. The title acquired under the second mode, by the exercise of the power of eminent domain, being thus in fee simple, it cannot be supposed that the legislature intended a less title, in general, to be acquired under the former mode, by purchase. The words "purchase, use and occupation," in the beginning of the 8th section of the Act of 1826, are distributive, as shown in the afterpart of that section, "purchase" being applicable to the land intended for permanent use, and "use and occupation," to that used temporarily in the construction of the works. It would be improper to assert that the canal commissioners could not accept a qualified use of the property where they thought the interests of the state would be promoted; but in the absence of language to express the qualification, the general intent of the law to acquire an absolute title should prevail where the words of the instrument will carry a fee simple. There is a good reason for this to be found in the propriety of uniformity in the title of the state. In establishing a great and permanent work, to endure for ever, as it was then supposed this canal would, the legislature contemplated an ownership of the land unembarrassed by private rights, such as a mere easement for passage would leave in the owner. To hold her canal by interrupted links of absolute ownership would be inconvenient and uncertain.

Guided by this general legislative intent, we can arrive at a proper interpretation of the deed in this instance. It was a form for general use, to be signed by the owners of different lands, and indicative therefore of the purpose to conform to the statute. After reciting the Acts of Assembly, it proceeds: "Now, therefore, in consideration of the benefits which result to the community in general and to us in particular, and also in consideration of the sum of one dollar to us in hand paid by the said commissioners in behalf of the state, the receipt whereof is hereby acknowledged, we hereby, for ourselves and heirs, *give, grant, cede and for ever transfer* to the Commonwealth of Pennsylvania for the purpose aforesaid, the privilege of taking and using all the waters and watercourses rising, flowing or passing through our land, and *also all the lands* belonging to us which shall be necessarily occupied by the site of the said canal (excepting therefrom ground for a basin), and also by the site of the towing-paths, feeders, aqueducts, spoil-banks and culverts connected therewith." In this portion of the instrument there are two subjects of the grant, the one water and the other land. The language applied to the former is suited to its nature, which is incapable of absolute dominion. The qualified right therein is well expressed by the terms "the privilege of taking and using." But in the grant of the land the words privilege of taking and

[Craig v. Mayor, &c., of Allegheny.]

using are omitted, the deed proceeding to say, "and also all the lands," &c. The expression is elliptical, however, and the plaintiff would supply the omission by repeating the words *privilege of taking and using* before the words " all the lands belonging to us." But in view of the general intent of the legislature as to the title intended to be vested in the state ; of the difference in the nature of the two subjects of the grant, water and land ; and the aptness of the language applicable to each ; and of the reference contained in the word " *also*," we prefer to supply the ellipsis by repeating the words of grant and transfer after the word " also." The sentence will then read thus : and also *give, grant, cede and for ever transfer* to the Commonwealth *all the lands* belonging to us, &c. The ellipsis must be supplied by relation to what has gone before. That reference, therefore, is preferable which conforms the instrument to the purpose of the law and adapts the language to the subject-matter. Thus the deed will convey the land absolutely in conformity to the legislative intent, and the privilege of using the water, in which, as an element, a qualified property only can be had.

But it is argued that the expression, for the purpose aforesaid, to wit, of a canal to be constructed at the expense of the state, defines the use, and the land reverts when the use ceases. We do not acquiesce in this view. This was one of the points decided in Haldeman v. The Pennsylvania Central Railroad Co. It was contained in the plaintiff's first point, was negatived by the court below, and assigned for error here ; and, although not referred to in terms in the opinion delivered, it is covered by the judgment. It is a corollary of the main proposition, for an absolute and perpetual estate in the land is neither revocable nor reversionary. The Commonwealth did not pay a pecuniary compensation to the grantor, but she did what is an equivalent—she expended her means in an improvement, which, in the language of the deed, benefited the grantor in particular, and the community in general. No one was more benefited than this grantor, whose fortunes, wrecked by the reverses following the war of 1812, were retrieved by the canal policy projected in the Act of 1826. His lands, then but ordinary farming ground, within the recollection of the writer of this opinion, are now the site of a prosperous city teeming with population, business and wealth. The Commonwealth embarked her fortunes in the then favorite, but untried system of canals. The consideration is as valid, therefore, as though money had moved from her directly to those who conveyed their lands in aid of the project, and for the benefit of themselves as well as of all.

More than a generation has passed away, but all the expected benefits have been realized by the grantor himself, while the stimulus of that act has given an impulse to growth and pros-

3 P. F. SMITH—31

[Craig *v.* Mayor, &c., of Allegheny.]

perity which has outlived it, and will remain to benefit others long after our own day.   The question cannot, therefore, be tested by the right of the Commonwealth to take possession, and then to abandon the execution of her projected canal.   How far in such a case equity would interfere to prevent a grant for an unexecuted purpose and without other consideration from being perverted, is not a subject of present inquiry, for here the purpose has been fulfilled, the benefit reaped, and the abandonment but the result of the march of improvement, and the progress of art and skill in their application to new modes of transit.   The locomotive engine, then almost unknown, and feebly traversing short levels, has now become the symbol of power, and·a type of civilization, whirling its long train with fiery speed over mountains and plains, and half spanning a continent in its rapid flight.

The judgment of the court below is therefore affirmed.