# Foust, Appellant, *v.* Dreutlein.

*Canals—Eminent domain—Canal dams—Conneaut Lake—Title to land overflowed—Fee or easement.*

Land submerged by the erection of the dam at Conneaut Lake by the canal commissioners of the Commonwealth for the purpose of storing water for the Pennsylvania canal was taken from the then owner by the Commonwealth for permanent use, and title in fee to the land became vested in the Commonwealth in perpetuity.

Argued April 22, 1912. Appeal, No. 248, Jan. T., 1911, by defendant, from judgment of C. P. Crawford Co., Nov. T., 1908, No. 6, on verdict for defendant in case of Andrew Foust and Alva Foust v. Henry Dreutlein. Before Brown, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Rule to bring ejectment for land in Summit township. Before Bouton, P. J., specially presiding.

In 1833 Cornelius Foust and William Power were adjoining riparian owners on the shore of Conneaut Lake. They each held under patents the dividing line between which was a north and south line which touched the shore of the lake at an acute angle. In 1833 the Canal Commissioners of Pennsylvania dammed the outlet of Conneaut Lake, by this means raising the water about twelve feet and causing an overflow of the lands of both Power and Foust. The land of Foust which was thus submerged amounted to about nine acres. The flowage covered all the property which is now in dispute. The water thus stored was a reservoir for the supply of the Erie division of the Pennsylvania Canal. This was the purpose of its construction and this use was the reason of the construction of the dam.

In course of time, the State sold the canal to a corporation and the property of the corporation was sold at judicial sale to a private purchaser, and the use of the canal as a highway or means of transportation was abandoned. In 1872 the dam across the outlet was broken down and the water receded to what had practically been the former level.

In 1873 Foust and Power established a consentable line which bisected the patent or division line between their properties, as above described in a direction at right angles to the lake. By this arrangement, Foust ceded to Power his title, whatever it was, to a wedge-shaped piece of land lying back from the lake, and Power, in like manner, ceded to Foust a wedge-shaped piece of land abutting on the lake. As a result, each tract preserved the same acreage, but the division line ran at right angles instead of obliquely to the lake. There was no dispute as to the consentable line thus established. By various conveyances not necessary to refer to such title as the Commonwealth acquired to the lands in dispute passed to Henry Dreutlein, the petitioner in this proceeding, who became the defendant under the issue framed by the court, and the title of Cornelius Foust passed to the respondents, Andrew Foust and Alva Foust, who were made plaintiffs in the issue.

The plaintiffs in the issue framed, claimed title in two ways. In the first place they claimed that the State had not taken a fee in the strip, but only an easement or right of support to the water so long as it might be there. In the second place, the plaintiffs contended that they and their predecessors in title had been in adverse possession of the land in dispute from 1873, when the waters receded.

Upon the first question thus raised the court charged the jury that the State took a fee in the lands in question and that this fee had passed to the defendant. Upon the second question the court first charged the

jury. that while no one of the acts or series of acts shown by the plaintiff was sufficient to establish title by adverse possession, yet the jury taking all the acts together might find that such possession had been established. The jury having remained out for several hours, the court sent for them and gave binding instructions for the defendant. The plaintiffs appealed.

*Error assigned,* among others, was in directing a verdict for the defendant.

*Patterson, Sterrett & Acheson* and *Manley O. Brown,* for appellants.—The Legislature of Pennsylvania and the courts construing and enforcing that legislation, have evidently regarded the title taken for the canal itself and including in the canal such permanent structures as tow-paths, basins and constructed or dug out reservoirs as acquired permanently by the state in fee simple. The other property not actually used for the permanent structure work of the canal and its immediate accessories was regarded as taken only to such extent as the Commonwealth might need it. When the canals as a system of transportation became obsolete and their place was taken by the railroads as a new and more effective means of transportation, in almost every instance the canal was taken over and occupied by some railroad as a more modern and up-to-date means of effecting the same purpose that the canal had originally been created to serve. There was, therefore, very strong equity underlying any mere technical construction of the words of the statute, to hold that the land owner having been paid once for what purported to be the permanent occupation of the soil, should not be paid for a second time, for what was really in effect the same public use. Whatever may be the reasons, however, the court felt satisfied that the title of the State in the canal itself and its immediate works, meaning by that works so constructed, excavated or other-

wise dealt with as to be apparently permanent, were taken by the state in fee. As to that which lies off the line of the canal, where under the terms of the act the canal is not constructed through the plaintiff's property, we submit that the question is determined by the general character of the state's occupancy, the purpose apparently fixed upon it and the apparent title for which the damages were assessed.

There is an entire distinction between the use of water-ways which are improved, dammed, cleared out or otherwise altered in connection with the canal and the constructive work of the canal itself. Conneaut Lake Ice Company v. Quigley, 225 Pa. 605.

*Frank J. Thomas,* of *Thomas* and *Thomas,* for appellee.—It has been uniformly held that where the State has taken land for the purposes of a canal, it acquires a title to the land so used or taken in fee: Commonwealth v. M'Allister, 2 Watts 190; Wyoming Coal & Transportation Co. v. Price, 81 Pa. 156; Robinson v. West Penna. R. R. Co., 72 Pa. 316; Haldeman v. Penna. Central R. R. Co., 50 Pa. 425; Craig v. Allegheny, 53 Pa. 477; Penna. & N. Y. Canal & R. R. Co. v. Billings, 94 Pa. 40; Water Works Co. v. Burkhart, 41 Ind. 364; Blair v. Kiger, 111 Ind. 193 (12 N. E. Repr. 293) ; Rexford v. Knight, 11 N. Y. 308; State v. Pitts. C. C. & St. L. Ry. Co., 53 Ohio St. 189 (41 N. E. Repr. 205) ; State v. Snook, 53 Ohio St. 521 (42 N. E. Repr. 544) ; DeLosier v. Penn. Canal Co., 11 Atl. Repr. 400.

Opinion by Mr. Justice Brown, July 2, 1912:

In 1833 the canal commissioners of the Commonwealth dammed the outlet of Conneaut Lake for the purpose of storing a supply of water for the Erie division of the Pennsylvania canal. In thus raising the waters of the lake the land which is the subject of this issue was submerged. Subsequently the State sold the canal, and its use as a highway or means of transpor-

tation was abandoned. In 1872 the dam across the out-
let of the lake was removed and the waters receded to
their former level. Whatever title the Commonwealth
acquired in the submerged land involved in this con-
troversy has passed, by various conveyances, to Henry
Dreutlein, the appellee.

The first contention of the appellants is that the
State did not take the submerged land for permanent
and continuous use in connection with the operation of
the canal, and did not, therefore, acquire title to it in
perpetuity. If it be true that the occupation of the
land by the Commonwealth was not permanent and con-
tinuing, but only of temporary or limited duration, it
reverted, upon the abandonment of the canal, to the
original riparian owner, under whom the appellants
claim. On the other hand, if the canal commissioners,
by submerging the land, took it from the owner for the
purpose of permanently increasing the water supply
to be stored in the lake for the permanent use of the
canal, the Commonwealth took a fee in the land, just
as it did in the bed of the canal itself. This is to be
regarded as settled by an unbroken line of cases, among
which are Haldeman v. Penna. Central R. R. Co., 50 Pa.
425; Craig v. Allegheny, 53 Pa. 477; Robinson v. West
Penna. R. R. Co., 72 Pa. 316, and Wyoming Coal and
Trans. Co. v. Price, 81 Pa. 156. In Robinson v. West
Penna. Railroad Company the question was whether
the Commonwealth had acquired a fee in a certain
tract of land or a mere easement in it, to be used as
a basin in connection with the canal, which, upon the
abandonment of the canal, reverted to the original
owners; and, in holding that it did not so revert, this
court said: "Why should the Commonwealth consent to
take and hold a less estate or interest in the basin than
in the bed of the canal or towing-path? The basin
was as necessary a part of the improvement as either,
and its use was intended to be as permanent. There
was then the same reason for taking an absolute estate

in one as the other ...... There can be no doubt of the right of the Commonwealth, under the Acts of February 25, 1826, P. L. 55, and·of April 9, 1827, P. L. 192, to take the land for the purpose of constructing the basin; nor of the owner's right to have the damages which he sustained by reason thereof, assessed under the provision of the latter act.   But the right of the Commonwealth to the land so taken, was an absolute estate in perpetuity; Commonwealth v. McAllister, 2 Watts 190; Haldeman v. Penna. Central R. R. Co., 50 Pa. 425; and could not be defeated or impaired by the owner's neglect or refusal to make application for the assessment of his damages within the time limited by the act."   All of this applies to the present case. Another case in which it was held that the Commonwealth had taken an estate in perpetuity in a piece of land which it had appropriated for the purpose of constructing a reservoir to furnish a supply of water to a canal is Delosier, et al., v. Pennsylvania Canal Company, 11 Atl. Repr. 400. It was there contended that an estate in perpetuity had not been taken by the Commonwealth; that it was the owner only of that portion of the land which formed the bed of the canal proper; that the statute expressly stipulated that nothing but an easement could be acquired to any other land taken, and, as the reservoir formed no part of the bed of the canal, on its abandonment the land reverted to the former owners.   This contention was not sustained by our late Brother DEAN, who presided at the trial of the case in the court below, and, in affirming the judgment upon a verdict directed by him, we said: "The boundaries of the land seized for the use of the State were sufficiently defined; and that the fee thereto vested in the Commonwealth is a matter now so well settled by previous decisions that discussion concerning it is unnecessary."

When it was discovered by the canal comissioners that the waters of Conneaut Lake in its natural state

would be insufficient for the purpose of supplying the canal, the dam was erected. This necessarily caused an overflow on the strip of land surrounding the lake, which included the part here in dispute. When it was submerged it was taken from the then owner by the Commonwealth for permanent use, and, therefore, in perpetuity, just as the land for the bed of the canal had been taken. The land taken for that bed would have been permanently useless unless water permanently flowed through it, and, that water might so flow through it, the canal commissioners took, not temporarily, but permanently, the strip of land surrounding the lake. The three acres claimed by the appellants are part of that land and were included in the strip of which we said, in Conneaut Lake Ice Company v. Quigley, 225 Pa. 605: "When the Commonwealth enlarged the lake, and raised its level, it overflowed a strip of ground all around the lake. After the abandonment of the canal and the return of the waters to the former level, the question of the ownership of the strip of land thus uncovered, arose, and it seems to have been decided, that the fee to this land had become vested in the Commonwealth."

A second contention of the appellants is that, even if the Commonwealth did acquire an absolute title to the land in dispute, they now have a title to it, as against the appellee, by adverse possession. In charging the jury, the learned trial judge below submitted to them the question of the sufficiency of the evidence to establish such title, but subsequently, upon being informed that they could not agree upon a verdict, he instructed them that the evidence was insufficient to establish title by adverse possession, and they were directed to find for the defendant. It would serve no useful purpose to review in detail the evidence upon which the appellants rely to establish title by adverse possession. It is sufficient to say that, tested by the well-known rules as to the proof required to establish such a title,

the ultimate conclusion of the learned trial judge was correct, that the appellants had failed to show such adverse, hostile, exclusive, continuous and notorious possession as has ripened into a title in them.

The assignments of error are overruled and the judgment is affirmed.