Commonwealth of Pennsylvania, Acting By and Through the Pennsylvania Game Commission, Appellant, *v.* Homer Renick, et al., Appellees.

Argued May 6, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*William C. O'Toole*, Assistant Attorney General, with him *Israel Packel*, Attorney General, for appellant.

*William D. Kemper*, with him *Lee C. McCandless* and *McCandless, Chew & Krizner*, for appellees.

OPINION BY JUDGE ROGERS, August 6, 1975:

The Pennsylvania Game Commission, an independent administrative commission of the Commonwealth, has appealed from an order of the Court of Common Pleas of Butler County sustaining the preliminary objections of Homer Renick and Patricia Renick, his wife, to the appellant's Declaration of Taking in this eminent domain case.

The Renicks own 21.1 acres of land in Washington Township, Butler County. The Game Commission, sought by resolution and by its Declaration of Taking, to acquire the "perpetual right, power, privilege and easement occasionally to overflow, flood and submerge the ... [Renicks' land] . . . in connection with, and incident to the construction of Glade's Dam. . . ." The principal preliminary objection made by the Renicks, sustained below, was that the Commission was without statutory power to condemn an interest in their, or any lands, of lesser dignity than that of a fee simple absolute estate.[1]

The statutory provision in issue is Section 901 of the "Game Law of 1937," Act of June 3, 1937, P.L. 1225, 34 P.S. §1311.901, which is, in its entirety, as follows:

---

1. The appellees and the court below use the phrases "fee simple" or "title in fee simple." Of course an estate in fee simple may be absolute, defeasible or conditional. We assume that the references are meant to be to fee simple absolute.

"The commission may acquire title to or control of lands and/or buildings within the Commonwealth, or the hunting rights or other rights on lands, suitable for the protection, propagation, and management of wildlife, or for public hunting and trapping, or administrative purposes, or to be used as hereinafter provided, by purchase, gift, lease or otherwise.

"The commission may also acquire title to lands by condemnation proceedings in the same manner as provided for the condemnation of lands for State Forests.

"The commission may also purchase tax delinquent lands from the commissioners of the respective counties, or from the county treasurers of the respective counties as provided by law.

"The commission may acquire by purchase or otherwise timber, minerals. oil, gas. or other rights outstanding for or on land for which titles have been or are being acquired.

"The commission may exchange timber which should be cut to improve wildlife conditions. or minerals or oil or gas. from lands for which title has been acquired for suitable lands having an equal or greater value than the estimated value thereof.

"Lands for which titles are acquired may be designated State Game Lands. or State Game Farms. or State Game Propagation Areas. depending upon the purpose for which they are to be used. Other lands for which the commission secures control or partial control may be given such designation as the commission may decide. or as may be agreed to by the owner thereof.

"The commission may lease or acquire title to lands from which the ownership of minerals, oil or gas. and the right to mine and drill for or remove the same. have been excepted and reserved. or from which water rights or timber or other rights have been

excepted or reserved, provided such exceptions and reservations will not seriously interfere with the purpose for which the property is acquired.

"All acquisitions of lands shall be made only with the consent of a majority of the commission. The president shall represent the commission in the execution of land purchase contracts. In the execution of leases and other similar agreements, approved by the commission, the executive director may represent the commission.

"The commission may lease or otherwise secure rights of way on and across either publicly-owned or privately-owned lands, or water or other rights which may be required to conduct its proper functions."

The court below by reference only to the two first paragraphs of Section 901, concluded that the Legislature had conferred on the Commission the power to acquire by condemnation only fee simple absolute estates and that the Commission was, therefore, without power to secure by condemnation the lesser interest of the right to flood, here condemned. The court's conclusion was premised solely on the strict construction rule of The Statutory Construction Act of 1972, 1 Pa. C.S. §1928 (b) (5). We believe that the court's interpretation of Section 901 was erroneous and must reverse its order.

First, the second paragraph of Section 901 does not declare that the only interest authorized to be taken by the Commission shall be an estate in fee simple absolute; rather, it empowers the Commission to acquire "title to lands." The word "title" does not describe an interest in property; it denotes only that "the person designated has the interest specified." *See* Comment to Section 10, Restatement of Property (1936). Section 901 does not specify any particular interest in real estate authorized to be taken; by the use phrase "title to lands" it provides only that any interest in land may be condemned. An interest in land is the "varying aggregates of rights,

privileges, powers and immunities ... [or] ... any of them." Restatement of Property, §5 (1936). Included, of course, in the power to acquire an interest is that of securing the interest of the privilege and power to occasionally flood land. An easement, which this right and power might loosely be denominated, is an interest in land, Restatement of Property, §450 (1936), and is "title to lands," as are also the many kind of estates and, indeed, future interests, of which the estate in fee simple absolute is only one.

Additionally, the whole of Section 901 clearly imports that the Commission should have the power to take whatever interest it requires to perform its duties to provide, propogate and manage wildlife. It may acquire by purchase, or otherwise, minerals, gas and oil; it may acquire title to lands from which these elements have been excepted or reserved; and by the last paragraph of the section it "may lease or *otherwise secure* rights of way ... water or other rights which may be required to conduct its proper functions." (Emphasis supplied.)

Further, a construction of the words "title to lands" as meaning "estate in fee simple absolute" and hence requiring the Commission to take a greater interest than it needs, flies in the face of the principle that, inasmuch as property cannot constitutionally be taken by eminent domain except for public use, no more property may be taken than the public use requires—a rule which applies both to the amount of property and the estate or interest to be acquired. Unless the statute expressly provides that a fee simple absolute estate must be taken which, as we have pointed out the instant statute does not, only an easement will be acquired by the condemnor, if that is all it requires. 3 Nichols, The Law of Eminent Domain, §§9.2[1] [2] [3] (3d rev. ed. 1974); *Truitt v. Borough of Ambridge Water Authority*, 389 Pa. 429, 133 A.2d 797 (1957).

Since the landowner usually seeks to limit rather than broaden the scope of the right of eminent domain, cases in which the thrust is in the opposite direction are somewhat rare. Our researches have unearthed *Philadelphia, Wilmington and Baltimore Railroad Company v. Williams,* 54 Pa. 103 (1867), where the landowner contested the right of a railroad company having power to "take land" to condemn a way and watercourse on lands of another but appurtenant to the landowner's property. The Supreme Court held that the power to take land included the power to take the right-of-way. Mr. Justice AGNEW'S colorful treatment of the subject seems apt here:

"It is argued also that the charter authorizes the taking of land only which is corporeal, and not a right of way which is incorporeal. This refinement is too subtle for our comprehension. It is difficult to understand how a right to enter upon land, and locate and construct a railroad thereupon, can be arrested by the existence of an incorporeal hereditament issuing or served out of it. One would suppose that in taking the land the way itself is taken. Omne majus continet in se minus seems to forbid any other conclusion. If the land itself which supports the way can be taken, I can see no reason why its incident, the right of way over it, is not equally affected by the same taking for the use of the public." 54 Pa. at 107.

On the exact issue of this case, three common pleas courts have held that easements may be taken under statutes conferring the power to appropriate land. *Commonwealth v. Burns,* 78 York Leg. Record 3 (1964); *Schwab v. Pottstown Boro.,* 78 Montg. Co. L.R. 1 (1961)[1]; *Harrisburg Light & Power Company v. Sebastian,* 11 Pa. D. & C. 30 (1927).

---

1. On appeal of this case, the Supreme Court dismissed the complaint in equity on jurisdictional grounds. 407 Pa. 531, 180 A.2d 921 (1962).

In short, a grant by the Legislature of the power to acquire by condemnation "title to lands" (or "lands" or "lands and property") is a grant of power to acquire that interest, and no greater interest, in real estate than is necessary to carry out the public purposes of the body on whom such power is conferred.

Order reversed; the record is remanded for further proceedings according to law.

Judge MENCER dissents.