512 A.2d 1329

Warren L. Kister and Janet O. Kister, His Wife, Petitioners *v.* Commonwealth of Pennsylvania Fish Commission, Respondent.

Argued June 12, 1986, before Judge MACPHAIL, and Senior Judges ROGERS and BARBIERI, sitting as a panel of three.

*James A. Kudasik,* for petitioners.

*Dennis T. Guise,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE ROGERS, July 22, 1986:

Warren L. Kister and Janet O. Kister, husband and wife, (petitioners) have filed a petition for review of an order of the Pennsylvania Department of Community Affairs, Board of Property, denying the prayer of their petition in the nature of an Action to Quiet Title that they be declared to have title to the oil, gas and minerals underlying a 99.812 acre tract of land in Somerset County and that the Commonwealth acting by the Pennsylvania Fish Commission (Commonwealth) be enjoined from setting up a claim of title to the oil, gas and minerals.

A history of events culminating in this litigation may be found in *Kister v. Pennsylvania Fish Commission,* 77 Pa. Commonwealth Ct. 430, 465 A.2d 1333 (1983) (*Kister I*). We there reversed an order of the Board of Property dismissing the petitioners' action for lack of juris-

diction and remanded the matter for disposition by the Board. That history is as follows: Charles B. Kister, father of Warren L. Kister, owned a farm in Somerset County. In April 1955, the Commonwealth filed a petition in the Court of Common Pleas of Somerset County, expressly stated to be pursuant to Section 1 of the Act of May 20, 1921, P.L. 984, *as amended,* 26 P.S. §§261, declaring that it proposed to construct a fish propagation dam and lake in Somerset County and that "for this purpose it is necessary that the petitioner acquire a portion" of Charles B. Kister's property. The portion taken was the 99.812 acre tract. The Commonwealth further represented in the petition for viewers that Charles B. Kister was the owner in fee simple of the land being acquired and that it, the Commonwealth, had attempted to purchase land from Charles B. Kister but a price could not be agreed upon. The prayers of the petition were that the court appoint viewers and that it fix a time when the viewers "shall meet upon the land and view the same and all improvements in connection therewith and determine the fair and reasonable price to be paid by the petitioner for said lands." Viewers were duly appointed, met, and on June 23, 1955 reported to the court that they had viewed the premises "to determine what if any damage may result from the appropriation of about 100 acres of [Charles B. Kister's] farm by the Commonwealth . . . for a . . . dam or lake"; that the farm contained a total of about 165 acres, leaving 65 acres "after the condemnation"; that the use of the farm "will be appreciably lessened by the condemnation"; and that they awarded the owner "$27,000 for the land condemned." The viewers' report is in the record.

As we reported in *Kister I,* Charles B. Kister and his then wife conveyed all of his lands to the petitioners Warren L. and Janet O. Kister in 1965 by a deed

excepting and reserving the 99.812 acres which had been taken by the Commonwealth. This deed recited that Charles B. Kister had conveyed the 99.812 acre tract to the Commonwealth; but that was not the fact.

In the 1970's, first the petitioners, and later the Commonwealth, each entered into oil and gas leases with others in each case including within the area of the leased premises the 99.812 acres here in suit. The lease entered into by the Commonwealth is called a Non-development Oil and Gas Lease and includes extensive stipulations by the lessee for the protection and conservation of the subject lands.

It is the position of the petitioners that Charles B. Kister, their predecessor, remained in title to the oil, gas and minerals in the 99.812 acres because the Commonwealth in the condemnation proceedings took title only to the surface and to whatever additional property rights which were necessary to support the dam and lake. This, they say, is shown by the language of the Commonwealth's petition for viewers that it "proposes to construct a fish propagation dam and lake . . . and for this purpose it is necessary that the [Commonwealth] acquire a portion of a tract of land belonging to Charles B. Kister."

If it is the petitioners' intention by this argument to emphasize the use of the word "portion," they have, we believe, mistaken the purpose of that word as used in the Commonwealth's petition for viewers. The recital to Charles B. Kister's title given in the petition just after the metes and bounds description of the 99.812 acre tract, reads, "Being a portion of premises conveyed to Charles B. Kister by earlier reference deeds." Also we have already noticed, the board of viewers found that the 99.812 acre tract was a part only of the Kister farm. Hence the word "portion" as used in the petition for viewers signified not the extent of the interest taken but

the fact that the land taken was only a part of the land owned by Kister at the time "a portion" was taken in condemnation.

If, on the other hand, the petitioners intend to say that the mere fact that the petition for review described the purpose of the condemnation as that of creating a dam and lake demonstrates that the Commonwealth intended to take only rights in the surface, their thesis runs counter to an old and well-settled rule of the cases to the effect that where the Commonwealth takes land for permanent and continuing occupation it acquires a fee absolute and no lesser estate. A leading case is *Foust v. Dreutlein*, 237 Pa. 108, 85 A. 68 (1912). There the Commonwealth dammed a stream for the purpose of storing water for the Erie Canal with the effect of taking, by submerging them, lands along a lake shore. The Commonwealth later sold the submerged land. Still later the dam broke, the waters receded and litigation was had between the successors in ownership to the Commonwealth and the descendants of the owners of the land at the time the Commonwealth took it. The latter claimed that the Commonwealth had not taken a fee but only an easement or right of support to the water. The successors to the Commonwealth contended that the Commonwealth took a fee simple absolute. As is apparent the facts and issue are remarkably similar to those of this case. The Supreme Court of Pennsylvania wrote:

> The first contention of the appellants is that the State did not take the submerged land for permanent and continuous use in connection with the operation of the canal, and did not, therefore, acquire title to it in perpetuity. If it be true that the occupation of the land by the Commonwealth was not permanent and continuing, but only of temporary or limited duration, it reverted, upon abandonment of the canal, to the

original riparian owner, under whom the appellants claim. On the other hand, if the canal commissioners, by submerging the land, took it from the owner for the purpose of permanently increasing the water supply to be stored in the lake for permanent use of the canal, the Commonwealth took a fee in the land, just as it did in the bed of the canal itself. This is to be regarded as settled by an unbroken line of cases, among which are Haldeman v. Penna. Central R.R. Co., 50 Pa. 425; Craig v. Allegheny, 53 Pa. 477; Robinson v. West Penna. R.R. Co., 72 Pa. 316 and Wyoming Coal and Trans. Co. v. Price, 81 Pa. 156.

237 Pa. at 112, 85 A. at 69. The Supreme Court there held that the taking was for permanent use and affirmed a judgment which had been rendered below in favor of the successors in title to the Commonwealth. The *Foust* holding was later followed and applied in *Parks v. Pennsylvania R.R. Co.*, 301 Pa. 475, 152 A. 682 (1930) and *Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834 (1938).

Here the Commonwealth took Charles B. Kister's 99.812 acres pursuant to Section 1 of the Act of May 20, 1921 P.L. 984, *as amended,* 26 P.S. §261, which provides that "[w]henever . . . the Board of Fish Commissioners desires to acquire land . . . for the perpetuation or protection of fish . . . and a price for such lands cannot be agreed upon with the owner . . . the Board of Fish Commissioners is authorized to acquire the said . . . lands by condemnation." The statute suggests no limitation upon the quantum of title which may be taken by the Commonwealth; and the petition for viewers by which Charles B. Kister's land was taken on the authority of the cases describes as its object the acquisiton of a fee simple absolute title. *Parks; Foust.* As we have earli-

er noticed, the petition declares the necessity "to acquire" the property and the board of viewers writes of the "appropriation of about 100 acres" and "the land condemned." Nor is there hint in these proceedings that the dam and lake taken more than thirty years ago were meant to be of temporary or were limited duration rather than a permanent and continuing improvement; indeed, the Commonwealth adduced evidence below to the effect that the ownership, and therefore control, of the subsurface oil, gas and minerals by the Commonwealth was necessary to prevent pollution of the lake.

The petitioners rely on our case of *Pennsylvania Game Commission v. Renick,* 21 Pa. Commonwealth Ct. 30, 342 A.2d 824 (1975). Our holding in that case was that the statute there under consideration, empowering the Game Commission to acquire title to lands by condemnation included the power to take an interest less than a fee simple absolute estate if no greater interest was required; and that the statute did not require that the Game Commission take a fee simple, as the landowner contended. In *Renick* the petition for viewers expressly described the interest taken as an easement. This case is the reverse of *Renick;* as we have seen, the interest taken here was a fee simple absolute.

Order affirmed.

## ORDER

AND NOW, this 22nd day of July, 1986, the order of the Board of Property in the above-captioned matter is affirmed.