In Re: Condemnation by the BEAVER FALLS MUNICIPAL AUTHORITY for PENNDALE WATER LINE EXTENSION, Big Beaver Borough, Beaver County, Constantine John Vassilaros and Sherry Vassilaros

v.

BEAVER FALLS MUNICIPAL AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2008.

Decided Nov. 21, 2008.

J. Philip Colavincenzo, Beaver, for appellant.

Samuel P. Kamin, Pittsburgh, for appellees, Constantine John Vassilaros and Sherry Vassilaros.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this eminent domain appeal, Beaver Falls Municipal Authority (Authority) asks whether the Court of Common Pleas of Beaver County (trial court) erred in sustaining the preliminary objections of Constantine John Vassilaros and Sherry Vassilaros (Condemnees) to the Authority's declaration of taking. Condemnees initially granted the Authority an easement over their property for an access road and water lines in connection with the Authority's construction of a water tank on property adjacent to Condemnees' property. Pursuant to the easement agreement, the Authority agreed to place excess soil from excavation of the access road at a location on Condemnees' property as directed by Condemnees. However, the Authority later condemned five acres of Condemnees' property in fee simple to avoid the expense of performing its obligation of moving the soil. The trial court determined the taking was invalid because it exceeded the reasonable needs of the Authority's project with regard to both the quantity of land and the quantity of the estate taken. Discerning no error in the trial court's decision, we affirm.

The trial court made the following findings. The Authority is a municipal authority duly organized and existing under the laws of the Commonwealth with its principal office located in the City of Beaver Falls, Beaver County. The Authority has the power of eminent domain, but not the power of taxation. Condemnees reside in Wampum Borough, Beaver County. They are fee simple owners of 64 acres in Big Beaver Borough (subject property). The subject property is adjoined along its western boundary by property owned by the company Speed4U, L.P., which fronts on Penndale Road.

In 2005, the Authority decided to construct a water tank and ancillary facilities on a portion of the property owned by Speed4U. The project required construction of an access road and water lines from Penndale Road to the water tank. In mid–2005, John Lightner, a representative of Michael Baker, Jr., Inc., the engineering firm representing the Authority, contacted Condemnees to discuss the possibility of using a portion of the subject property for the access road. A few weeks later, Lightner again contacted Condemnees with an aerial photograph to show the proposed location of the water tank, the water lines and the access road. The proposed water line and access road crosses the northwest corner of the subject property in a generally east-west direction and exits onto the property of Speed4U in a southerly direction, then in a westerly direction, to the proposed location of the water tank.

In June 2005, a subdivision plan for the property owned by Speed4U was prepared. This plan created "Lot No. 1" for the location of the water tank and an easement, 30 feet in width, running from Lot No. 1 in an easterly direction to the western property line of the subject property then in a southerly direction through the remaining property of Speed4U to Penndale Road. The subdivision plan was recorded on July 14, 2006.

On July 6, 2006, Condemnees executed and delivered a water line easement agreement to the Authority. The easement agreement was recorded on July 11, 2006.

In the easement agreement, Condemnees conveyed an easement for a water line and access road across the subject property. The location of the access road and water line is described in the second "Whereas" clause of the agreement in the following manner: "The specific placement of the access road and the location of the right-of-way for the water line relative to said access road are more particularly described in the scaled drawing prepared by the [Authority's] engineer, dated August 2005, receipt for which [Condemnees] acknowledge having been sent to them on or about August 12, 2005." Supplemental Reproduced Record (S.R.R.) at 170b. The granting clause of the easement agreement described the location of the access road and the water line as follows: "[Condemnees] hereby grant, sell and convey to the [Authority], its successors and assigns, an easement and right-of-way more particularly bounded and described in the attached survey performed by the [Authority's] surveyors and engineers." S.R.R. at 171b. Condemnees received the general drawing referred to in the "Whereas" clause on August 12, 2005. The survey referred to in the granting clause was not attached to the recorded water line easement agreement.

The stated consideration for the grant of the easement to the Authority included: (1) the Authority would provide water service to Condemnees and a tap to connect to the water line at no fee; (2) the Authority would specifically delimit the area where the access road and water line easement would be placed; (3) Condemnees would have the right to remove all salable timber from the area of the water line easement and access road; and, (4) the Authority would stockpile any excess excavation from construction of the access road on the subject property at Condemnees' direction.

The easement agreement contained the following clause immediately following the granting clause: "The [Authority], for itself and its agents and assigns agrees to abide by the specific terms herein insofar as not locating the road access [sic] or the water line easement on any property of [Condemnees] other than those specifically shown herein and to abide by any and all other provisions mentioned in the previous paragraphs including the stockpiling and including the right of [Condemnees] to take timber." S.R.R. at 171b. The Authority further agreed Condemnees could seek additional compensation from the Authority.

On August 1, 2006, the Authority began construction of the access road when it entered the subject property. The Authority constructed the access road entirely on the subject property from a point intersecting the northerly line of Penndale Road, running in a northerly direction for a distance exceeding 800 feet.

Significantly, the Authority stockpiled excess soil from the construction of the access road at a location on the subject property to which Condemnees did *not* agree. The soil remains in that location. The stockpile contains 10,900 cubic yards

of earth, is 25 to 30 feet in height and exceeds 30 feet in width.

After construction of the access road and water line began, a dispute arose between the parties as to whether the location of the access road and water line complied with the terms of the water line easement agreement.

The Authority filed its declaration of taking on April 10, 2007, condemning a portion of the subject property consisting of five acres in fee simple. The Authority subsequently amended the declaration of taking twice on April 20 and June 18, 2007. The Authority filed the declarations of taking because it wanted to avoid the cost of moving the stockpile of soil from its present location to a location directed by Condemnees.

Condemnees filed preliminary objections. After hearing, the trial court sustained the preliminary objections, finding the amount of land taken by the Authority far exceeded the amount of land reasonably required for the project's purpose, and the estate in land taken by the Authority far exceeded the estate reasonably required for the project's purpose. Thus, the trial court set aside the taking.

The Authority subsequently filed a motion for reconsideration, which the trial court denied in a second opinion. This appeal by the Authority followed.

On appeal, the Authority argues the trial court erred in: failing to afford proper deference to the Authority's exercise of its eminent domain power; rejecting as pretextual the Authority's claim of "other considerations" to justify the taking; and, ignoring credible evidence from a representative of the engineering firm that represents the Authority.

■  Initially, we note, our review of a trial court's decision to sustain or overrule preliminary objections to a declaration of taking in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by County of Allegheny*, 861 A.2d 387 (Pa.Cmwlth. 2004).

■  Preliminary objections filed pursuant to Section 406(a) of the Eminent Domain Code, 26 P.S. § 1–406(a),[1] serve a different function than those filed in other civil actions. *In re Stormwater Mgmt. Easements*, 829 A.2d 1235 (Pa.Cmwlth. 2003). They are the exclusive method for resolving challenges to the power or right of the condemnor to appropriate the condemned property unless previously adjudicated, the sufficiency of the security, and any other procedures followed by the condemnor or the declaration of taking. *Id.* They are intended to serve as a mechanism for the expeditious resolution of factual and legal challenges to a declaration of taking before the parties proceed to the damages stage. *Id.*

## I.

The Authority first argues the trial court erred in disregarding the presumption of correctness that is to be afforded to the Authority's exercise of eminent domain. It asserts the trial court also erred in substituting its judgment for that of the Authority's directors.

The Authority maintains Pennsylvania courts consistently hold a condemnee attacking a public authority's exercise of eminent domain bears a heavy burden because there is a strong presumption the public authority acted properly. The Authority asserts it is undisputed here that it

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* formerly 26 P.S. §§ 1–101–1– 903, repealed by section 5(2) of the Act of May 4, 2006, P.L. 112.

exercised its eminent domain power for a public purpose and that such exercise would benefit the Authority's water customers because it would enable the Authority to avoid the cost of relocating the stockpile of soil onto other property of Condemnees, it would allow the Authority to secure the property from vandals consistent with the mandate of the USA Patriot Act[2] (vandalism occurred during construction of the access road, prompting concerns over the security and safety of the public water system), and it would ensure better erosion control toward other lands of Condemnees and the commercial interests of the neighboring speedway. The Authority contends that while the trial court correctly noted it could not substitute its judgment for that of the Authority, the trial court ignored this mandate when it determined the Authority needed no further land and no additional estate in the land other than that acquired through the easement agreement.

The Authority argues that in invalidating the taking, the trial court improperly focused on Condemnees' loss of the beneficial use of the subject property because of the stockpile of soil, rather than the beneficial public purpose served by the Authority's exercise of eminent domain.

In *Township of Cornplanter v. McGregor*, 745 A.2d 725, 726–27 (Pa.Cmwlth. 2000), this Court explained (with emphasis added):

> Article 1, Section 10 of the Pennsylvania Constitution provides, in pertinent part, "[n]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." PA. Const. art. I, § 10. Based on this constitutional mandate, it is well settled that private property may be taken for

public purposes *only in such an amount and to such an extent as these purposes reasonably require*. *Bachner v. City of Pittsburgh*, 339 Pa. 535, 15 A.2d 363 (1940); *Philadelphia Felt Company's Appeal*, 293 Pa. 551, 143 A. 208 (1928); *Pennsylvania Mutual Life Insurance Company v. Philadelphia*, 242 Pa. 47, 88 A. 904 (1913); *Wilson v. City of Scranton*, 141 Pa. 621, 21 A. 779 (1891); *Commonwealth v. Renick*, 21 Pa.Cmwlth. 30, 342 A.2d 824 (1975).

Indeed, as this Court has previously stated:

> [I]nasmuch as property cannot constitutionally [be] taken by eminent domain except for public use, *no more property may be taken than the public use requires-a rule which applies both to the amount of property and the estate or interest to be acquired.*

*Id.*, 342 A.2d at 827. *See also Westrick v. Approval of Bond of the Peoples Natural Gas Company*, 103 Pa.Cmwlth. 578, 520 A.2d 963, 965 (Pa.Cmwlth.1987) ("A power to acquire land is the power to acquire an interest that is not greater than is necessary to carry out the public purpose of the body on which such power is conferred.").

Of particular import here, the issue of whether a proposed taking is excessive is a legitimate inquiry and raises an issue of fact. *N. Penn Water Auth. v. A Certain Parcel of Land*, 168 Pa.Cmwlth. 477, 650 A.2d 1197 (1994); *Appeal of McKonly*, 152 Pa.Cmwlth. 211, 618 A.2d 1169 (1992). Indeed, in *North Penn Water Authority*, we stated that a trial court is required to hear evidence on this factual issue.

In this case, in its second (and final) declaration of taking, the Authority specifically set forth its purpose for condemning

2. Pub.L. No. 107–56, 115 Stat. 396 (2001).

five acres of the subject property in fee simple:

> The purpose of the within condemnation is to acquire property for the extension and completion of supplying water and the placement of a water tank on contiguous property to the condemned property and for the expansion of the water system in general of the [Authority] in order to serve the citizens of northern Beaver County and Big Beaver Borough.

Authority's Second Am. Declaration of Taking, 6/18/07, at ¶ 7.

Condemnees filed preliminary objections to the Authority's Second Amended Declaration of Taking asserting, among other things, an excessive taking. Condemnees' Prelim. Objections to Second Am. Decl. of Taking at ¶ 29. Specifically, Condemnees asserted:

> 29. The use and occupancy of Condemnees' land as more fully described in the Declaration of Taking and the filing of the subsequent Amended Declarations of Taking *amounts to an excessive taking, inasmuch as the land taken is far in excess of the amount of land reasonably required for the contemplated purpose of the project.*
>
> 30. *The taking in question is excessive with respect to both the title acquired as well as the estate acquired.*

*Id.* at ¶¶ 29, 30 (emphasis added). Condemnees further alleged the parties executed a water line easement agreement that already granted the Authority the amount of land necessary for its stated purpose and the type of estate in land necessary for that purpose. *Id.* at 13.

Condemnees also asserted the Authority approached them for the purpose of negotiating the water line easement agreement, and the agreement specifically set forth the amount of land necessary for the Authority's purpose and the type of estate

necessary to effectuate the Authority's purpose (an easement). The easement agreement, which the Authority drafted, further specified the negotiated consideration for the easement, including a requirement that the Authority stockpile all excess excavation fill on the subject property, at locations designated by Condemnees. *Id.* at ¶ 13(c). Condemnees averred the Authority acted on the parties' agreement when, on August 1, 2006, the Authority entered the subject property for the purpose of constructing the access road and the necessary improvements. *Id.* at ¶ 14. Without the agreement, the Authority had no legal authority to enter Condemnees' property. According to Condemnees' preliminary objections, the Authority stockpiled certain excavation material, but failed to comply with provisions of the agreement requiring the material be stockpiled in area designated by Condemnees. *Id.* at ¶ 18.

■ After hearing, the trial court found:

> 23. The amount of land taken by [the Authority] far exceeds the amount of land reasonably required for the purpose of the project.
>
> 24. The estate in land taken by [the Authority] far exceeds the estate reasonably required for the purpose of the project.

Tr. Ct., Slip Op., 2/27/08, Findings of Fact (F.F.) Nos. 23, 24. The trial court determined the Authority's reasonable needs consisted of an access road from Penndale Road to the water tank, and a storage area to stockpile the excess soil removed by construction of the access road. Tr. Ct., Slip Op., 2/27/08, at 10. The trial court further determined both needs were fulfilled by the water line easement agreement, and, therefore, "[n]o further land and no additional estate in the land were necessary for that purpose." *Id.* Thus, the

trial court determined the Authority acted arbitrarily and capriciously when it condemned more property than was necessary to meet its reasonable needs, for its stated purpose.

The trial court's determinations are supported by the record, and we discern no error in the trial court's decision. More particularly, the trial court's finding that the Authority's reasonable needs consisted of an access road from Penndale Road to the water tank, and a storage area to stockpile the excess soil removed by construction of the access road, is directly supported by the Authority's Second Amended Declaration of Taking. *See* Authority's Second Am. Decl. of Taking at ¶ 7. The trial court determined the parties' easement agreement provided the Authority with the amount of land, and the type of estate in land necessary to effectuate the stated purpose of the taking. Thus, the trial court determined, by virtue of the easement agreement, the Authority already acquired the amount of land and the type of land necessary for this purpose. These findings are directly supported by the easement agreement. *See* S.R.R. at 170b (Water Line Easement Agreement; purpose of agreement). Also, pursuant to the easement agreement, the Authority agreed that any excess soil from the excavation of the access road would be stockpiled on Condemnees' property at Condemnees' direction. S.R.R. at 171b.

Further support for the trial court's findings is found in the testimony of Condemnee Sherry Vassilaros. More particularly, Mrs. Vassilaros explained the parties negotiated for an easement across the subject property, rather than a fee simple taking because otherwise a portion of the subject property would be landlocked. R.R. at 104a. She also testified it was important to Condemnees to have the excess soil placed in an area that they desig-nated in order to level their property. R.R. at 105a. She explained if the soil continued to remain at its present location, the subject property would be too steep to put in another driveway or access road. *Id.*

In addition, John Lightner, the representative from the Authority's engineering firm, testified the parties entered into a discussion about the proposed access road in June 2005, and he acknowledged that an "integral" part of the parties' discussion was the need for a "shared road" between Condemnees and the Authority. R.R. at 192a–93a. He further confirmed that having a shared road would not present any problem to the project. R.R. at 200a.

As to the excess soil stockpiled on the subject property, Lightner acknowledged that excess soil excavation would first be piled in a temporary location. R.R. at 199a. He also admitted that in late August or early September 2005, he discussed the placement of the soil excavation pile with Condemnees because "that was an open issue that [he] needed to get resolved for the construction plans." R.R. at 197a–98a. Lightner testified that it was his understanding the easement agreement provided that the Authority would relocate the excess soil stockpile at Condemnees' direction. R.R. at 215a–16a. He further acknowledged the Authority did not place the excess soil in an area directed by Condemnees. R.R. at 216a.

The above evidence further supports the trial court's determination that the amount of land condemned and the type of estate in land condemned exceeded the amount reasonably necessary for the Authority's stated purpose.

As to the stockpile of excavated soil, the trial court determined the only reason "[the Authority] decided to condemn almost 5 acres of ... Condemnees' land in fee simple was to avoid the expense of

performing its obligation under the Water Line Easement Agreement to move the stockpile o[f] soil to the location desired by ... Condemnees." Tr. Ct., Slip Op., 2/27/08, at 10–11.

We reject the Authority's attempts to reframe the trial court's statement as a ruling on the appropriateness of the purpose stated in the declaration of taking. The trial court's observation concerning the Authority's actual reason for filing its declaration of taking (to avoid its obligation under the agreement) did not constitute a ruling as to the propriety of the Authority's purpose for the condemnation. Indeed, the parties stipulated the propriety of the purpose for the condemnation was not at issue. *See* Certified Record, Item # 22 (Stipulations) at 2, ¶ 5. The Authority's arguments are merely an attempt to shift our focus away from the trial court's key findings that the Authority's reasonable needs consisted of an access road to the water tank, and a storage area to stockpile the excess soil removed by excavation of the access road, and that both of these needs were fulfilled by the water line easement agreement. Therefore, we reject this argument.

## II., III.

In its second and third issues, the Authority maintains the trial court's opinion champions Condemnees' financial interests in advancing their goal of maximizing the commercial value of the subject property by having a flat area where the soil stockpile would be placed if the Authority expended needless funds to do so. It contends the trial court's reference to the "huge soils pile," in its denial of the Authority's motion for reconsideration, reveals the flaw in the trial court's reasoning: it focused more on Condemnees' financial interest and their right for compensation rather than the beneficial pub-

lic interests served by the Authority's exercise of eminent domain. The Authority argues, even if the only reason for its exercise of eminent domain was to avoid the costs of relocating the soil stockpile, this consideration was valid, and if the trial court properly applied the presumption of correctness, it would have upheld the exercise of eminent domain.

The Authority further asserts that in denying its motion for reconsideration, all testimony from James Culler, another representative from the Authority's engineering firm, relating to erosion control, security and other cost considerations justifying the exercise of eminent domain, was deemed "incredible." It points out, however, that no evidence was presented to dispute the validity of Culler's on these points.

■ Appellate review in an eminent domain case is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings of fact were supported by substantial evidence. *Denes v. Pa. Tpk. Comm'n,* 547 Pa. 152, 689 A.2d 219 (1997). Questions of credibility and conflicts in the evidence are for the trial court to resolve. *Id.* If sufficient evidence supports the trial court's findings as fact-finder, we will not disturb these findings. *Id.* Additionally, we may not disturb a trial court's credibility determinations. *In re: Condemnation of Land for S.E. Cent. Bus. Dist. Redevelopment Area # 1,* 946 A.2d 1143 (Pa.Cmwlth.2008).

Here, after the trial court issued its initial opinion on the merits, it issued a second opinion denying the Authority's motion for reconsideration. Through its motion for reconsideration, the Authority requested the trial court hear additional evidence of "other considerations" to justify its decision to file the declaration of taking. In its opinion denying reconsider-

ation, the trial court explained (with emphasis added):

> In its Motion for Reconsideration, [the Authority] points to testimony from its [e]ngineer, James Culler, about other considerations which led to the conclusion that fee simple ownership rather than its existing easement was necessary. These included minimizing other expenses, maintaining and controlling erosion and sedimentation and security mandated by the Homeland Security Act. *We did not make findings of fact on these matters because we found them to be incredible.*
>
> This project began with an easement agreement for the access road and a water line which was prepared by the [Authority] and entered into by the parties. Part of the consideration for the agreement was the [Authority's] agreement to place excess dirt from the excavation of the access road at a location on [the subject property] as directed by them. The pile of dirt was huge and was not placed where ... Condemnees wanted it in violation of the easement agreement. The cost of moving the stockpile would be "sizeable." John Lightner, an [e]ngineer and [the Authority's] [p]roject [m]anager, testified that he told the [Authority] to condemn because it was cheaper than moving the stockpile.
>
> The other considerations testified to by James Culler were merely pretexts. These same considerations would have existed at the time the easement agreement was entered into. If they were as important as the [Authority] now contends, they would have and should have been addressed in the easement agreement. We believe we were correct in concluding that the [Authority's] reasonable needs were fulfilled by the [w]ater [l]ine [e]asement [a]greement and that no further land and no additional estate

in land was necessary for that purpose. Consequently, we properly sustained the preliminary objections and set aside the taking.

Tr. Ct., Slip Op., 4/18/08, at 2–3. Thus, the trial court deemed "incredible" the Authority's "other considerations" for condemning an additional amount of land and estate in land. Clearly, we cannot disturb the trial court's credibility determination. *In re: Condemnation of Land for S.E. Cent. Bus. Dist.* Moreover, as explained in detail above, the trial court's necessary determinations are adequately supported by the record.

Based on the foregoing, we affirm.

### *ORDER*

AND NOW, this 21st day of November, 2008, the order of the Court of Common Pleas of Beaver County is **AFFIRMED.**