**In re: Condemnation by the PENNSYLVANIA TURNPIKE COMMISSION of Property Located in the PTC of Hampton, Allegheny County, Commonwealth of Pennsylvania, for the Total Reconstruction of the Pennsylvania Turnpike between Mileposts 40 and 48 (Parcel ID No. 1213–N–37).**

**Appeal of: George W. Dukovich and Judith A. Dukovich, Husband and Wife.**

**In re: Condemnation by the Pennsylvania Turnpike Commission of Property Located in the PTC of Hampton, Allegheny County, Commonwealth of Pennsylvania, for the Total Reconstruction of the Pennsylvania Turnpike between Mileposts 40 and 48 (Parcel ID No. 1213–N–37).**

**Appeal of: George W. Dukovich and Judith A. Dukovich, Husband and Wife.**

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2013.

Decided Jan. 23, 2014.

that PennDOT owes a duty to maintain safe roadways, regardless of the regulation.

David F. Toal, Millvale, for appellants.

Samuel P. Kamin, Pittsburgh, for appellee.

BEFORE: LEADBETTER, Judge, and McCULLOUGH, Judge (P.) and COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

George W. Dukovich and Judith A. Dukovich, husband and wife, (together, Condemnees) appeal from two orders of the Court of Common Pleas of Allegheny County (trial court). The first order, dated July 25, 2012, overruled Condemnees' preliminary objections to a declaration of taking filed by the Pennsylvania Turnpike Commission (Commission) and referred the matter to a Board of Viewers for a determination of damages. The second order, dated September 12, 2012, awarded possession of the property at issue to the Commission upon the deposit of estimated just compensation in the amount of $10,700 into court, with such monies being held by the Allegheny County Department of Court Records until further order.

## I. Facts and Procedural History

The underlying facts are not in dispute. Condemnees own nearly thirteen acres of property in Allegheny County (County) located at 4812 Middle Road, Allison Park, Hampton Township, Pennsylvania. Condemnees' property abuts portions of the mainline turnpike and Middle Road leading up to, but not abutting, the Middle Road Bridge. Middle Road is owned by the County. The Commission is in the process of a substantial turnpike reconstruction project in this area. The Commission plans to demolish the Middle Road Bridge and rebuild it at a higher elevation in order to comply with federal safety standards as it reconstructs the turnpike below.[1] Rebuilding the bridge at a higher elevation will require a realignment of Middle Road near the bridge, raising the surface of the road itself seven and a half feet at the edge of Condemnees' property to meet the higher bridge. The raising of Middle Road will also require additional lateral and vertical support for the roadway along Condemnees' property.

On September 23, 2011, the Commission filed a declaration of taking with respect to the following portions of Condemnees' property:

0.300 acre in fee as required right-of-way for limited access, 0.265 acre in fee as required right-of-way for Middle Road (C–2309/02), 0.005 acre in ease-

---

1. The Federal Highway Administration and the Surface Deployment and Distribution Command Transportation Agency of the Department of Defense mandate that bridges have a minimum sixteen-foot elevation above the finished grade to facilitate the travel of military vehicles. (Commission's brief at 4.).

ment as required substitute right-of-way for Duquesne Light, and 0.047 acre as temporary construction easement, a partial take.

(Reproduced Record (R.R.) at 25A.)[2] The Commission offered Condemnees estimated just compensation in the amount of $10,700, without prejudice to Condemnees' right to proceed to a final determination of just compensation. (Trial court op. at 2.) Condemnees refused that offer and filed preliminary objections.

Specifically, Condemnees raised the following objections: (1) the Commission's taking was excessive, not required for the stated purpose in the declaration of taking, and involved Middle Road, a County road; (2) the Commission lacked appropriate approval from Hampton Township; (3) the Commission is attempting to condemn land along its right-of-way for no public purpose; (4) the Commission was attempting to take property on behalf of Allegheny County without the consent or authorization of the County; (5) the trial court lacked subject matter jurisdiction; and (6) the Commission exceeded its authority under law and acted contrary to the public health, welfare, and safety. (R.R. at 37A–38A.)

Condemnees subsequently filed a motion for summary judgment with respect to objections four and five, but the trial court denied the motion. The trial court conducted a hearing on July 19, 2012. George Dukovich testified that the area around the current bridge is basically flat, but that after the reconstruction, there will be a "huge mound" along the entire frontage of his property. (R.R. at 56A.) Dukovich stated that as a result of this "huge embankment," he may not be able to divide his property into lots for his children in the future. (R.R. at 57A.) On cross-exami-

nation, Dukovich responded that he has not submitted a subdivision plan for his property, but that "it doesn't stop [him] from what [his] dream is." (R.R. at 59A.) Dukovich described this subdivision as one of the future "goals" for himself and his wife and the "easiest way to give [their] children property." (R.R. at 60A.)

Mark Magalotti, a registered professional engineer with over thirty years of experience in transportation engineering, testified on behalf of Condemnees. Magalotti reviewed the plans for the bridge reconstruction submitted by the Commission. (R.R. at 61A.) Magalotti testified that the Commission plans refer to a three-to-one slope, or three feet of horizontal area for every one foot of vertical elevation, but that a two-to-one slope could be used which would lessen the impact on Condemnees' property. (R.R. at 62A.) Additionally, Magalotti stated that if the Commission opted for a bridge with a middle support, the height of the bridge could be reduced by four feet and the impact on adjacent roadways would be lessened. *Id.* Magalotti noted that, rather than taking the property in fee, the Commission could have obtained a slope easement. (R.R. at 63A.) On cross-examination, Magalotti conceded that he did not review the curvature of the turnpike itself in reviewing the Commission's plans. (R.R. at 65A.) Magalotti acknowledged that he was unaware of any requirements relating to military vehicles. (R.R. at 66A.) Magalotti also acknowledged that construction of a middle support was discussed and rejected at a Commission meeting. (R.R. at 67A.)

John Schwab, a highway and transportation engineer, testified for the Commission. Schwab worked for McCormick Taylor, the primary designer for the project.

. The page numbers in the reproduced record submitted by Condemnees are followed by an uppercase A, instead of a lowercase a as required by Pa.R.A.P. 2173.

(R.R. at 69A.) Schwab testified that many different designs were considered for the project. *Id.* Schwab stated that the area where the Middle Road Bridge crosses the turnpike is considered a grade separation, i.e., two roadways intersect at different grades. (R.R. at 70A.) Schwab noted that there is a sharp "S" curve in the turnpike in the area under the bridge. *Id.* Schwab also noted that federal highway requirements mandate a sixteen-foot vertical clearance above the finished grade. (R.R. at 71A.) Schwab testified that the Pennsylvania Department of Transportation design manual calls for a three-to-one slope off the shoulder of a collector road such as Middle Road, which he opined was safer than a two-to-one slope. (R.R. at 72A, 75A.) Schwab indicated that the use of a middle support for the bridge was discussed at several meetings and rejected due to the effect on the mainline turnpike, including the cost, and the difficulty in safely diverting traffic during its construction. (R.R. at 72A–73A.) On cross-examination, Schwab conceded that a slope easement would permit the construction to go forward and that a middle support/center pier might be possible. (R.R. at 76A.) On re-direct examination, Schwab indicated that a slope easement provides minimal rights and may present problems in the future if repairs or additional work is necessary. (R.R. at 78A.)

By order dated July 25, 2012, the trial court overruled Condemnees' preliminary objections and referred the matter to the Board of Viewers for a determination of damages. Condemnees filed a timely appeal on August 20, 2012 (docketed at No. 1630 C.D. 2012). The Commission thereafter filed a petition to deposit estimated just compensation. By order dated Sep-

tember 12, 2012, the trial court granted the petition. In this order, the trial court: (1) directed the Commission to pay estimated just compensation of $10,700 into court; (2) awarded possession of the property to the Commission; and (3) directed the County's Department of Court Records to hold these monies until further order. Condemnees filed a timely appeal of this order on September 24, 2012 (docketed at No. 1851 C.D. 2012).[3]

In a subsequent opinion in support of its orders, the trial court first noted that section 6 of what is commonly referred to as the Pennsylvania Turnpike Commission Act, Act of May 21, 1937, P.L. 774, 36 P.S. § 652f, authorizes the Commission to "acquire by condemnation ... any lands, rights, easements, franchises and other property deemed necessary or convenient for the construction or the efficient operation of the turnpike...." The trial court also noted that it was limited to determining whether the Commission exercised fraud, bad faith, or an abuse of discretion. The trial court found that the record in this case reflects that the Commission condemned the property for a valid public purpose, followed the proper procedures under its enabling statute and the Eminent Domain Code (Code), 26 Pa.C.S. §§ 101–1106, and complied with the Pennsylvania Constitution.

The trial court indicated that the Middle Road Bridge is at a different elevation than the mainline turnpike and, thus, qualifies as a grade separation. The trial court indicated that the Legislature has specifically authorized the Commission to "provide grade separations at its own expense with respect to all public roads, State highways and interstate highways intersected by the turnpikes and to change and adjust

---

**3.** By order of this Court dated December 17, 2012, the appeals were consolidated for dis- position.

the lines and grades thereof so as to accommodate the same to the design for grade separation." 74 Pa.C.S. § 8107(a)(7). Additionally, this statute provides that any "damages incurred in changing and adjusting the lines and grades of public roads" or in "acquiring the right-of-way and determining damages incurred in changing the location of or vacating the road" shall be "ascertained and paid by the commission in accordance with 26 Pa.C.S. (relating to eminent domain)." 74 Pa.C.S. § 8107(a)(7)(i), (iii). The trial court noted that neither the County nor Hampton Township objected to the condemnation.

Further, the trial court noted that it denied Condemnees' motion for summary judgment with respect to the fourth and fifth preliminary objections because these objections related to the Commission's authority to file a declaration of taking without an ordinance from the Allegheny County Council and it found that such an ordinance was not required. In addition, the trial court concluded that Condemnees' reliance on section 777–5 of the Allegheny County Code, ALLEGHENY COUNTY, PA., CODE § 777–5 (2012), was misplaced, as that section related to the authority of the Department of Public Works, not the Commission, to acquire property via eminent domain. Finally, with respect to its grant of a writ of possession, the trial court cited section 307(a) of the Code, which provides that "[t]he court, unless preliminary objections warranting delay are pending, may issue a writ of possession conditioned except as provided in this subsection upon payment to the condemnee or into court of the estimated just compensation and on any

other terms as the court may direct." 26 Pa.C.S. § 307(a)(1)(iv).

■ On appeal,[4] Condemnees first argue that the trial court erred in failing to conclude that section 302(b)(3) of the Code, 26 Pa.C.S. § 302(b)(3), requires that Allegheny County Council pass a resolution authorizing the Commission to take land for the expansion and reconfiguration of Middle Road, a county road. We disagree.

## Discussion
### Section 302(b)(3) of the Code

■ Section 302(b)(3) states that a declaration of taking must contain a "specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized, including the date when the action was taken and the place where the record may be examined." 26 Pa.C.S. § 302(b)(3). In the present case, Condemnees note that the Allegheny County Council passed no such resolution or ordinance approving the taking of Middle Road. However, we cannot agree that section 302(b)(3) of the Code requires the Commission to obtain the approval of the Allegheny County Council.

In its declaration of taking, the Commission stated that it was authorized and empowered by section 6 of the Pennsylvania Turnpike Commission Act to condemn lands for the turnpike. This section authorizes the Commission to "acquire by condemnation ... any lands, rights, easements, franchises and other property deemed necessary or convenient for the construction or the efficient operation of the turnpike...." 36 P.S. § 652f; *see also* 74 Pa.C.S. § 8109(a).[5] Additionally, the

---

4. In eminent domain cases, our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Redevelopment Authority of the City of Scranton v. Piccolino*, 41 A.3d 175 (Pa.Cmwlth.2012).

5. Section 8109(a) similarly authorizes the Commission to "condemn, pursuant to 26 Pa.

General Assembly has specifically authorized the Commission to:

Provide grade separations at its own expense with respect to all public roads, State highways and interstate highways intersected by the turnpikes and to change and adjust the lines and grades thereof so as to accommodate the same to the design for grade separation.

74 Pa.C.S. § 8107. Further, the Commission's declaration of taking references a resolution adopted on August 16, 2011, authorizing the taking in question. Condemnees do not discuss the authorizations provided by the General Assembly or this resolution in their brief to this Court.

Instead, Condemnees simply argue that the Commission must have the express approval of the Allegheny County Council, relying on *Nicoletti v. Allegheny County Airport Authority*, 841 A.2d 156 (Pa. Cmwlth.2004), for support. However, Condemnees' reliance is misplaced. *Nicoletti* involved the attempted condemnation of property located near the Pittsburgh International Airport. The County held surface rights to the property in fee, while Carol Nicoletti held the property's mineral rights in fee. The County leased its surface rights to the Airport Authority (Authority). The Authority, without the consent or cooperation from the County, filed a declaration of taking to condemn Nicoletti's interest in the property. The Authority's stated purpose of the condemnation was to "assure unto the [Authority] the absolute and unqualified fee simple title." *Nicoletti*, 841 A.2d at 159.

Nicoletti filed preliminary objections to the Authority's declaration, but the trial court overruled those objections. Nicoletti appealed and this Court found that in order for the Authority to fulfill its stated purpose of fee simple ownership, it would have to terminate all opposing interests in the property. This would also require the termination of the County's interest, as the County's lease agreement with the Authority expressly retained a reversionary interest for the County. However, section 5615(a)(2)(i) of the Municipality Authorities Act, 53 Pa.C.S. § 5615(a)(2)(i), prohibited the Authority from obtaining title to property owned by the County through condemnation.[6] Based on this provision, we concluded that the Authority did not possess the power to condemn the County's interest in the airport property absent the County's express consent. This Court further noted that the express terms of the lease between the County and the Authority required County involvement in any actions to clear title to the property underlying the airport. Noting that the record lacked any express or implied consent of the County to the condemnation or that the County actively participated in the proceedings, we vacated the trial court's order and dismissed the Authority's declaration without prejudice.

However, in the present case, as noted above, section 6 of the Pennsylvania Turnpike Commission Act, coupled with 74 Pa. C.S. § 8109(a), authorizes the Commission to condemn lands for construction or operation of the turnpike. Additionally, 74 Pa. C.S. § 8107 provides the Commission with

C.S. (relating to eminent domain), any lands, interests in lands, property rights, rights-of-way, franchises, easements and other property deemed necessary or convenient for the construction and efficient operation of the turnpikes...."

6. Section 5615(a)(2) states that the right of eminent domain does not apply to "[p]roperty owned or used by the United States, the Commonwealth or any of its political subdivisions, or an agency of any of them, or any body politic and corporate organized as an authority under any law of the Commonwealth or by any agency."

specific authority in relation to grade separations, including, as in this case, changes and adjustments to the lines and grades thereof on "all public roads." Further, the General Assembly, in section 5 of what is commonly referred to as the Western Pennsylvania Turnpike Extension Act, Act of June 11, 1941, P.L. 101, *as amended,* 36 P.S. § 654d, has described the Commission's exercise of its powers relating to the "construction, operation and maintenance of the turnpike" as an "essential governmental function of the Commonwealth." Contrary to Condemnees' assertions, these statutes supersede the provisions of the County Code.[7] *See* Section 2962(e) of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2962(e) ("Statutes shall supersede any municipal ordinance or resolution on the same subject.").

Moreover, the record reveals that the Commission complied with section 777-2 of the County Code and secured the necessary approvals for the changes in the lines and grades of the Middle Road Bridge. Section 777-2 provides as follows:

No person, public utility, private company, municipality or municipal authority shall occupy or perform any work upon or under a County highway or bridge without first securing a highway occupancy or bridge occupancy permit. County Council does hereby authorize the Department of Public Works to grant such highway and bridge occupancy permits so long as such actions shall promote public safety and welfare and shall not interfere with any existing or

anticipated County governmental function. All such grants shall be consistent with sound engineering practices and the regulations of the Department of Public Works in effect on the date hereof or that may be hereafter adopted. County Council does further authorize the Director of the Department of Public Works, or his designee, to take any and all further actions as may be necessary or proper to carry out the authorization granted herein, including, but not limited to, the execution of the permits identified in this section. Notwithstanding the foregoing, County Council shall have the right to rescind or revoke any action taken under the authority granted herein.

(R.R. at 116A–17A.) Schwab, the Commission's engineer, testified, and Condemnees do not dispute, that the minutes from a County meeting on June 22, 2005, reflect that the County approved the Commission's line and grade changes for Middle Road and issued the Commission a highway occupancy permit for the project. (R.R. at 73A–74A.)

In light of the specific authority granted to the Commission by our General Assembly, Condemnees' misplaced reliance on *Nicoletti,* and the Commission's compliance with section 777-2 of the County Code, we conclude that the Commission's declaration of taking complied with section 302(b)(3) of the Code and that a resolution from the Allegheny County Council authorizing the Commission's taking was not required.[8]

---

7. Condemnees assert that the trial court erred by concluding that the statutes discussed above preempted the authority of the Allegheny County Council to approve the takings of County roads. However, the present case does not involve a taking of any County road. Rather, the Commission's taking related solely to Condemnees' property. The Commission only sought to work on changing the

lines and grade of Middle Road, which is specifically authorized by 74 Pa.C.S. § 8107.

8. Condemnees also argue on appeal that the trial court erred in not granting their summary judgment motion with respect to preliminary objections four and five. However, these preliminary objections relate to Condemnees' allegation that the Allegheny County

### Excessive Taking

■ Next, Condemnees argue that the trial court erred in failing to find that the Commission's taking in fee simple was excessive, when an easement would have been sufficient. Again, we disagree.

■ In its review of a decision to condemn property and the extent of the taking, the trial court is limited to determining whether the condemnor is guilty of fraud, bad faith, or has committed an abuse of discretion. *In re Condemnation of Property of Waite,* 163 Pa.Cmwlth. 283, 641 A.2d 25, *appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994). The burden of proving that the condemnor has abused its discretion is on the objector or condemnee and the burden is a heavy one. *Id.* In such cases, there is a strong presumption that the condemnor has acted properly. *Id.* Nevertheless, we have previously held that the issue of whether a proposed taking is excessive is a legitimate inquiry and raises an issue of fact, requiring a common pleas court to hear evidence on the issue. *North Penn Water Authority v. A Certain Parcel of Land,* 168 Pa.Cmwlth. 477, 650 A.2d 1197 (1994); *Appeal of McKonly,* 152 Pa.Cmwlth. 211, 618 A.2d 1169 (1992).

■ In that regard, "[t]he quantum of land to be acquired is, within reasonable limitations, a matter within the condemnor's discretion." *In re Condemnation of Property of Waite,* 641 A.2d at 28 (citing *Truitt v. Borough of Ambridge Water Authority,* 389 Pa. 429, 133 A.2d 797 (1957)). Additionally, "[i]nasmuch as property cannot constitutionally [be] taken by eminent domain except for public use, no more property may be taken than the public use requires—a rule which applies both to the amount of property and the estate or interest to be acquired." *In Re: Condemnation by the Beaver Falls Municipal Authority for Penndale Water Line Extension,* 960 A.2d 933, 937 (Pa. Cmwlth.2008) (citation omitted).

In the present case, Condemnees have offered no evidence that the Commission acted fraudulently, in bad faith, or that it abused its discretion. Instead, Condemnees assert that even Schwab, the Commission's engineer, agreed with their engineer, Magalotti, that all work could be done by simply acquiring an easement. However, Condemnees rely on a single statement by Schwab that mischaracterizes the entirety of his testimony.[9] Upon questioning from the Court, Schwab conceded that, with respect to reconstruction of the Middle Road Bridge, a slope easement would be sufficient. (R.R. at 76A.) However, immediately thereafter, Schwab indicated that a slope easement would not be sufficient for purposes of maintenance. *Id.* Later, on re-direct examination, Schwab explained why taking the land in fee was necessary:

Q Mr. Schwab, with respect to the slope easement, even though you might be able to construct the slope easement, might there be other considerations you would use aside from the, quote, constructability issues, slope versus fee, if you recall?

---

Council was required to pass a resolution authorizing the Commission's taking. Given our disposition of this issue above, we see no error on the part of the trial court in denying this motion.

9. We note that Condemnees' entire argument with respect to this issue comprises three short paragraphs in its brief to this Court and is not fully developed. Condemnees' argument rests on a single, out-of-context statement by Schwab discussed above as well as the testimony of their expert, Magalotti, that a slope easement would have been sufficient. However, this limited testimony is simply not enough for this Court to conclude that the taking herein was excessive.

A Yea, there—one of the things that I know the Turnpike has run into and PennDOT has run into, as well, with slope easements is if you are doing future—if you need to adjust the drainage system, extend a pipe, the rights that you get with a slope easement may not allow you to do that. If you're going to do plantings or—there are a lot of maintenance issues that they've run into over time that has caused the Turnpike and PennDOT and most agencies to want to acquire the land in fee simple.

I mean, they need the land to have a road. They want to be able to maintain the road without having legal fights over what their rights are. So my understanding is that in order to fulfill their mission, they found that it's advantageous to have land in fee simple.

Q Last question. With respect to the Middle Road slope, by taking a fee instead of a slope [easement], did you actually lessen the impact with respect to the Dukovich property?

A Actually, one of the issues that we are dealing with, that we had to deal with at this particular location, was the electric—Duquesne Light electric line. We were able to have that electric line within the right-of-way for Middle Road.

If we had had a slope easement, I think we probably would have had to—I don't remember exactly what the width was that Duquesne Light was requesting, but it was more than we ended up allowing them to live with under our current consideration.

My point is that if we went with a slope easement, we would have had to acquire an easement for Duquesne Light that would have probably been more extensive than the land that we ended up acquiring.

(R.R. at 78A.) Given the heavy burden on Condemnees to establish fraud or bad faith, as well as the discretion generally afforded to a condemnor with respect to the "quantum of land to be acquired," *In re Condemnation of Property of Waite*, we cannot conclude that Condemnees met their burden herein to establish that the Commission's taking in fee simple was excessive.

*Writ of Possession*

■ Finally, Condemnees argue that Pa.R.A.P. 1701 deprived the trial court of the authority to issue a writ of possession because such action did not preserve the status quo and did not constitute enforcement of a prior order.[10] However, we agree with the Commission that section 307(a) of the Code and our prior decision in *In re Condemnation No. 2*, 943 A.2d 997 (Pa.Cmwlth.2007), *cert. denied*, 555 U.S. 1070, 129 S.Ct. 732, 172 L.Ed.2d 727 (2008), mandate a contrary result.

**10.** Pa.R.A.P. 1701 states, in relevant part, as follows:

(a) General rule. Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.
(b) Authority of a trial court or agency after appeal. After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:
 (1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.
 (2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.
 (3) Grant reconsideration of the order which is the subject of the appeal or petition. . . .

Pa.R.A.P. 107 states that "Chapter 19 of Title 1 of the Pennsylvania Consolidated Statutes (rules of construction) so far as not inconsistent with any express provision of these rules, shall be applicable to the interpretation of these rules and all amendments hereto to the same extent as if these rules were enactments of the General Assembly." Hence, the Rules of Appellate Procedure are to be construed in accordance with the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. Section 1933 of this act provides that:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933.

While Pa.R.A.P. 1701 generally provides for a stay pending appeal, the Code contains specific provisions detailing the right of a condemnor to possession of a condemned property. For example, as noted by the trial court, section 307(a)(1)(iv) of the Code provides that "[t]he court, unless preliminary objections warranting delay are pending, may issue a writ of possession conditioned except as provided in this subsection upon payment to the condemnee or into court of the estimated just compensation and on any other terms as the court may direct." 26 Pa.C.S. § 307(a)(1)(iv). Furthermore, section 307(a)(2)(h), 26 Pa. C.S. § 307(a)(2)(ii), provides a remedy in the nature of the recovery of costs and expenses and the revesting of title in the event that a condemnation is finally deter-mined to be invalid after the granting of possession under section 307(a)(1). Consistent with section 1933 of the Statutory Construction Act of 1972, these specific provisions must prevail over the general stay provision of Pa.R.A.P. 1701.

Moreover, this Court has previously considered and rejected a similar argument in *In re Condemnation No. 2.* In that case, the condemnees similarly argued that the common pleas court had erred in granting the condemnor's petition for writ of possession while the condemnee's preliminary objections were pending on appeal to this Court. We disagreed, holding that:

Where, as here, the trial court properly determined that [the] [c]ondemnee failed to meet its heavy burden of showing that the condemnation of its Property was arbitrary, capricious or an abuse of discretion, we conclude that the trial court did not abuse its discretion in granting possession of the Property to [the] Condemnor.

943 A.2d at 1004. Having concluded that Condemnees failed to meet their heavy burden of establishing that the Commission acted fraudulently or in bad faith with respect to the condemnation of their property, we likewise conclude that the trial court acted properly in issuing a writ of possession to the Commission.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 23rd day of January, 2014, the orders of the Court of Common Pleas of Allegheny, dated July 25, 2012, and September 12, 2012, respectively, are hereby affirmed.