IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation By Gulich : 
Township Of Property Located : 
In Gulich Township, Clearfield : 
County, Pennsylvania : 
 : 
        v. : No. 184 C.D. 2015
 : Submitted: November 16, 2015
Jack K. and Carla F. Mullen, : 
(Tax Map No. 110.0-K16-509-00012), : 
        Appellants : 


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: December 11, 2015


Jack K. and Carla F. Mullen (collectively, Condemnees) appeal the order of the Clearfield County Court of Common Pleas (trial court) overruling their preliminary objections[1] to the declaration of taking filed by Gulich Township

---

[1] Section 306 of the Eminent Domain Code provides, in relevant part:

> **(a) Filing and exclusive method of challenging certain matters.—**
>
>        \*     \*     \*
>
>     (3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:

**(Footnote continued on next page…)**

(Township) condemning a 20' by 120' parcel of Condemnees' property[2] alleging that the Township's taking is excessive based on the stated purpose and motivated by animus and bad faith. We affirm.

_____

**(continued…)**

> (i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
>
> (ii) The sufficiency of the security.
>
> (iii) The declaration of taking.
>
> (iv) Any other procedure followed by the condemnor.
>
>      \*   \*   \*
>
> **(f) Disposition.—**
>
> (1) The court shall determine promptly all preliminary objections and make preliminary and final orders and decrees as justice shall require, including the revesting of title.
>
> (2) If an issue of fact is raised, the court shall take evidence by depositions or otherwise.
>
> (3) The court may allow amendment or direct the filing of a more specific declaration of taking.

26 Pa. C.S. §306(a)(3), (f).

[2] Gulich Township is a Second Class Township. 121 The Pennsylvania Manual 6-124 (2013). Section 1701(a) of the Second Class Township Code (Township Code), Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §66701(a), provides, in relevant part, that "[t]he board of supervisors may procure by … the exercise of eminent domain a lot or lots of ground located within the township and erect or use buildings thereon for township purposes…." *See also* Section 1502(a) of the Township Code, 53 P.S. §66502(a) ("The board of supervisors may purchase, acquire by gift or otherwise, … any real … property it judges to be to the best interest **(Footnote continued on next page…)**

The Township's Municipal Building is located at 525 Walnut Street in the Township. Initially, the Municipal Building, an 83' long structure, sat on a single parcel of land when the Township acquired it in 1959. However, the lot was subsequently subdivided and Condemnees acquired the adjacent 62' by 120' parcel located at 513 Walnut Street. There is a house on the adjoining lot that was built back in the early 1900s that Condemnees use for storage. As a result of the subdivision, the Municipal Building encroached onto Condemnees' adjoining lot by approximately three feet.

As a result, in August 2014, the Township filed a declaration of taking condemning a 20' by 120' strip of Condemnees' parcel[3] stating, in relevant part:

> No challenge was made to the encroachment until Condemnees asserted a conflicting chain in January 2014. The purpose of this condemnation is to square the Township line and acquire enough of the adjoining

---

**(continued…)**

of the township."). In turn, Section 3401 of the Township Code, added by Act of November 9, 1995, P.L. 350, states, in pertinent part:

> When the right of eminent domain or the ascertainment and assessment of damages and benefits in viewer proceedings is exercised by a township, the proceeding shall be as set forth in this article. In addition to any provisions of this act, all eminent domain proceedings shall conform to … the "Eminent Domain Code."

53 P.S. §68401.

[3] Lateral waterlines serving both Condemnees' structure and the Township's Municipal Building are within the area of Condemnees' parcel that the Township condemned.

property to provide an appropriate set back as well as resolve the encroachment contest.

(Reproduced Record (RR) 5a).

In September 2014, Condemnees filed preliminary objections to the declaration of taking, alleging that "[t]he amount of the encroachment is miniscule in comparison to the taking and represents animus, bad faith and abuse of the [Township's] eminent domain power…." (RR 14a). Condemnees asserted that "[a] twenty (20) foot taking is not necessary to resolve an approximately three (3) foot maximum encroachment," and that the stated setback purpose "is disingenuous" because "there is no zoning ordinance in [the] Township requiring a twenty (20) foot setback and the taking will leave Condemnee with only a two to three foot setback." (*Id.*). Condemnees also claimed that the taking was "grossly disproportionate to any reasonable necessity" and "represents retribution for prior disputes between [them] and certain Township officials" because it "will deny [them] access to their outside basement entry by taking a portion of the entry, will take away [their] off-street parking area, take [their] public water underground lateral and hookup." (*Id.* 14a-15a).

At a hearing in the trial court, Carla Mullen testified that at the time that she purchased the adjacent property, there were three different Township supervisors in office and that they had a verbal agreement for reciprocal use of the property whereby the Township entered her property to maintain the property such as cutting weeds. She stated that this agreement also permitted her to encroach

4

onto the Township property by dumping manure thereon. In explaining why she thought that the Township's taking in this case was excessive, Mullen testified:

> Well, it's excessive because we're talking about a building that's sitting on less than three feet. They not only want the three feet the building is on, but they want additional land as well and have given every conceivable reason why they believe it may be necessary when, in fact, it's not.
>
> The building has been there for how many years and there's been no problem. If they approach us and have a reasonable discussion as to why it is that it's necessary for them to enter our property in order to do things such as maintenance with cutting weeds, things like that, that has never been denied them, ever.

(RR 50a-51a).

However, she testified that they had an agreeable relationship until 2013 when the Township severed the agreement. She explained that she was involved in litigation with the Township regarding access to its Rails to Trails line in which summary judgment was granted regarding the boundaries of the properties and the Township's ownership of an adjoining parcel. She stated that she has been involved in other disputes with the Township such as a report that she made to the Board of Ethics regarding the Township's Chairman and an occasion when she directed roofers working on the Township Municipal Building to remove a dumpster that had been placed on her property. She also identified an exhibit which depicted where the Township had placed a waterline lateral on her property to remove gray water from the Township Municipal Building and where the

5

waterline lateral to her structure is located, both of which are located within the area condemned by the Township. She acknowledged that she sent the Township a letter during the litigation demanding rent from April 2013 and maintaining that she owned a portion of the Township Municipal Building. She stated that she would have taken action to evict the Township from the 32" by 83' encroachment if it failed to pay the demanded rent. (RR 64a-65a). She also testified that, following notice, she has continually refused to permit the Township's surveyor to enter the property regarding the condemnation[4] and that the surveyor called the State Police when he attempted to do so. (*Id.* 74a-78a).

Alex Solan, Chairman of the Township's Board of Supervisors, testified that the condemnation was not based on animus or bad faith stating, "Absolutely not, it's something that we offered to make settlement at the meeting and she said no. So to take care of our problem there with the waterline and everything, we voted to take it." (RR 92a-93a). He testified that the buried waterline lies outside of the Township Municipal Building's exterior wall on Condemnees' property and the Township does not have any ability to access it for maintenance, repair or replacement. He stated that the reason for the taking was for the building encroachment and access to the waterline, and that the Board decided to condemn a 20' wide parcel "[b]ecause when – if you would have to go in there to work on it, the outriggers on the backhoe when you lay them down, it's

---

[4] Section 309(a) of the Eminent Domain Code states that "[p]rior to the filing of the declaration of taking, the condemnor or its employees or agents shall have the right to enter upon any land … in order to make studies, surveys, tests, soundings and appraisals." 26 Pa. C.S. §309.

12 foot 9 inches, that's 13 feet, and you've got to set away from the building a little bit to work…," so they were giving themselves room for a backhoe and a truck for pipe to get into the area next to the Township Municipal Building.  (*Id.* 102a, 111a).[5]  He also testified that the amount of land condemned by the Township does not interfere with Condemnees' use of their outside basement door.  (*Id.* 103a-104a).

---

[5] *See* Defendant's Exhibit 7 at 1, a December 2014 letter from the Township's counsel to Condemnees' counsel, that states, in relevant part:

> While your proposal included an access easement, the Board feels strongly that given the conduct of your clients that it would be in the best interest for the Township to own.  As your clients' easement proposal of 100 feet may reflect, the township water line lies approximately four feet from the building wall for approximately that depth.  Eight (8) feet of access would be insufficient to accommodate a backhoe or other equipment to repair, replace or improve the line.

> The Supervisors have no faith that [Condemnees] would be anything but difficult in the future.  Previously, when a contractor attempted to repair the roof on that side of the building, [Condemnees] confronted the contractor and made him move his dumpster.  In this case, despite the clear legal authority in the Eminent Domain Code for his access, [Condemnees] refused to permit our surveyor access for the purposes of doing the survey for the taking even after Mrs. Mullen agreed with me on arrangements to do so.

*See also* Section 3404 of the Township Code, 53 P.S. §68404 ("When land or property is taken under eminent domain proceedings, other than for road purposes, … the title obtained by the township is in fee simple.  In particular instances, a different title may by agreement be acquired."); Section 1 of the Act of April 14, 1949, P.L. 442, 26 P.S. §201 ("When any political subdivision of this Commonwealth shall hereafter, in the exercise of the power of eminent domain, acquire by appropriation and condemnation any real estate, the title thereto which shall vest in such … political subdivision shall be a title in fee simple, unless prohibited in the ordinance or resolution authorizing the appropriate and condemnation thereof.").

The trial court dismissed Condemnees' preliminary objections. The trial court rejected Condemnees' assertion that the Township acted in bad faith or with animus, explaining:

> Evidence was not offered by [Condemnees] sufficient to meet their burden of proving fraud, bad faith, or abuse of discretion on the part of the Township. Testimony was offered indicating that the Township attempted to amicably resolve the encroachment issue by offering to purchase the land from [Condemnees] prior to initiating any condemnation action. However, Carla Mullen rejected this offer. [(RR 91a-92a)].
>
> It appears that the relationship between [Condemnees] and the Township has recently grown somewhat contentious to say the least. However, throughout the course of the litigation in this matter it has become apparent to the trial court that blame for the deterioration in this relationship largely rests with [Condemnees]. Evidence was offered to indicate that [Condemnees] engaged in antagonistic actions toward the Township such as placing heaps of manure on or near Township property. [(RR 60a, 62a, 65a-66a, 86a)]. Furthermore, Carla Mullen's demeanor at trial was abrasive and antagonistic suggesting antipathy for the Gulich Township Board of Supervisors. The Court does not find that the Township was motivated by animus or ill-will toward [Condemnees]. Rather, upon analyzing the facts presented at the hearing on the matter, the trial court found that the Township acted reasonably with respect to resolving the building encroachment.

(RR 130a).

The trial court also rejected Condemnees' claim that the taking was excessive explaining:

8

The trial court will not second guess the Township regarding the amount of land acquired; this is within the Township's discretion and the trial court sees no reason to substitute its judgment for that of the condemning authority. In the alternative, upon analysis of the evidence presented at the hearing on the matter, and given the deteriorating relationship between [Condemnees] and the Township, the Court does indeed find that the quantum of land condemned was a reasonable amount of land necessary to resolve the encroachment, under the circumstances.

(RR 131a).

In this appeal,[6] Condemnees claim that the trial court erred and abused its discretion in dismissing the preliminary objections. Condemnees argue that the Township's taking of a 20' wide strip of land, nearly one-third of their property, to relieve a 2' to 3' building encroachment is excessive because only a 4' taking is necessary to correct the Township Municipal Building's encroachment and, while the waterline is not mentioned in the declaration of taking, only an easement is required to maintain the building and waterline.[7] We do not agree.

---

[6] When a trial court has either sustained or overruled preliminary objections to a declaration of taking, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by Beaver Falls Municipal Authority*, 960 A.2d 933, 940 (Pa. Cmwlth. 2008) (citations omitted).

[7] Condemnees raise additional claims regarding the condemnation's impact on their own waterline, vehicular access to the rear of the property, and future commercial use of the property. However, such claims are not properly raised or disposed of by preliminary objection to the Township's declaration of taking. *In re Condemnation by Department of Transportation*, 798 A.2d 725, 732 (Pa. 2002); *Appeal of Keith*, 861 A.2d 387, 392-93 (Pa. Cmwlth. 2004).

9

As this Court has explained:

> In its review of a decision to condemn property and the extent of the taking, the trial court is limited to determining whether the condemnor is guilty of fraud, bad faith, or has committed an abuse of discretion. The burden of proving that the condemnor has abused its discretion is on the objector or condemnee and the burden is a heavy one. In such cases, there is a strong presumption that the condemnor has acted properly. Nevertheless, we have previously held that the issue of whether a proposed taking is excessive is a legitimate inquiry and raises an issue of fact, requiring a common pleas court to hear evidence on the issue.[8]

> In that regard, "[t]he quantum of land to be acquired is, within reasonable limitations, a matter within the condemnor's discretion." Additionally, "[i]nasmuch as property cannot constitutionally [be] taken by eminent domain except for public use, no more property may be taken than the public use requires—a rule which applies both to the amount of property and the estate or interest to be acquired."

*Appeal of Dukovich*, 84 A.3d 768, 776 (Pa. Cmwlth. 2014) (citations omitted).

As the trial court noted in this case, Condemnees failed to present any credible evidence to support their heavy burden of demonstrating the Township's

---

[8] As this Court has explained, "[q]uestions of credibility and conflicts in the evidence are for the trial court to resolve. If sufficient evidence supports the trial court's findings as fact-finder, we will not disturb these findings. Additionally, we may not disturb a trial court's credibility determinations." *In re Condemnation by Beaver Falls Municipal Authority*, 960 A.2d at 940 (citations omitted). Moreover, the evidence must be viewed in a light most favorable to the Township, the party that prevailed in the trial court. *Billings v. Upper Merion Township*, 405 A.2d 967, 969 (Pa. Cmwlth. 1979).

purported fraud, bad faith or abuse of discretion in condemning the 20' strip of land. Rather, the trial court properly found that, based on the credible evidence, Condemnees engaged in a course of conduct designed to antagonize and harass the Township officials while disputes over the boundaries of their adjoining parcels were litigated. Clearly, the condemnation in fee of some portion of Condemnees' land was necessary and proper to correct the encroachment of the Township Municipal Building onto their land and to avoid their demand for rent for the Township's use of its own facility and their threatened eviction of the Township from its own facility in the absence of such payment. Sections 1701(a) and 3404 of the Township Code, 53 P.S. §§66701(a), 68404.

Additionally, the Township presented substantial competent evidence explaining why the 20' strip was designated for condemnation in fee with respect to the ownership and maintenance of the existing Township facilities.[9] While the waterline was not specifically mentioned in the Township's declaration of taking, the Chairman of the Township's Board of Supervisors explained why the "appropriate set back" contained therein was required for the maintenance of the Township Municipal Building and its waterline. In sum, there is substantial record evidence to support the trial court's finding "that the quantum of land condemned was a reasonable amount of land necessary to resolve the encroachment, under the

---

[9] In these respects, the instant case is distinguishable from those cited by Condemnees regarding the condemnation of land needed for an unfunded future use or a temporary use or where a total fee interest was not necessary. *Cf. Winger v. Aires*, 89 A.2d 521 (Pa. 1952); *Estate of Rochez*, 558 A.2d 605 (Pa. Cmwlth. 1989); *Appeal of Octorara Area School District*, 556 A.2d 527 (Pa. Cmwlth. 1989).

11

circumstances," and the court's determination in this regard will not be disturbed by this Court on appeal.[10]

Accordingly, the trial court's order is affirmed.

_____

DAN PELLEGRINI, President Judge

Judge Cohn Jubelirer did not participate in the decision in this case.
Judge McCullough dissents.

---

[10] *See, e.g., Appeal of Dukovich*, 84 A.3d at 776 ("Upon questioning from the Court, Schwab conceded that, with respect to reconstruction of the Middle Road Bridge, a slope easement would be sufficient. However, immediately thereafter, Schwab indicated that a slope easement would not be sufficient for purposes of maintenance. Later, on re-direct Schwab explained why the taking in fee was necessary: … ['I mean, they need the land to have a road. They want to be able to maintain the road without having legal fights over what their rights are. So my understanding is that in order to fulfill their mission, they found that it's advantageous to have land in fee simple….[']") (citations omitted); *Appeal of Waite*, 641 A.2d 25, 28 (Pa. Cmwlth. 1993) ("Although the testimony offered by Waite's witnesses demonstrated, at best, the possibility of options other than those taken by the Authority, this evidence was not sufficient to meet her burden and did not overcome the presumption that the Authority's actions were reasonable. The evidence failed to show that it was unreasonable for the Authority to condemn a 300-foot-wide strip parallel to its existing runway for the provision of a buffer between the airport and further development.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation By Gulich :
Township Of Property Located :
In Gulich Township, Clearfield :
County, Pennsylvania :
                :
           v. : No. 184 C.D. 2015
                :
Jack K. and Carla F. Mullen, :
(Tax Map No. 110.0-K16-509-00012), :
          Appellants :

**O R D E R**

AND NOW, this 11<u>th</u> day of <u>December</u>, 2015, the order of the Clearfield County Court of Common Pleas dated January 19, 2015, at No. 2014-1198-CD, is affirmed.

_____
DAN PELLEGRINI, President Judge