# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the :
City of Philadelphia of 0.59263 :
Acres in the City of Philadelphia, :
Philadelphia County, Pennsylvania :
Identified as Tax Map Number: :
111N24, Lot 12 : No. 561 C.D. 2019
: Argued: June 8, 2020
:
Property Address: 5250 Unruh :
Avenue, Philadelphia, PA 19135 :
:
Appeal of: 5250 Unruh Avenue :
Associates :


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED: July 23, 2020**


5250 Unruh Avenue Associates (UAA) appeals from an order of the Court of

Common Pleas of Philadelphia County (trial court), dated March 19, 2019. The trial

court overruled UAA's preliminary objections to a declaration of taking filed by the

City of Philadelphia (City) pursuant to Section 302 of the Eminent Domain Code

(Code).[1] For the reasons set forth below, we affirm the trial court's order.

In 2001, the City initiated plans for the development of the North Delaware

Greenway, a 10-mile chain of public parks, trails, and bike paths stretching along

the Delaware River. (Reproduced Record (R.R.) at 101a-02a.) The North Delaware

---

[1] 26 Pa. C.S. § 302.

Greenway will include a 1.6-mile walking/biking trail that the City intends to construct upon a 30-foot-wide abandoned railroad track bed formerly known as the Kensington & Tacony Railroad (K&T Railroad). (*Id.* at 101a, 552a.) Once completed, the North Delaware Greenway will connect to the East Coast Greenway, "a several-thousand-mile trail that extends from Maine to Florida along the East Coast, connecting major cities . . . [, including] Boston, New York, Philadelphia, [and] Wilmington . . . ." (*Id.* at 336a.) Sometime around August 2011, the City hired Stantec, an engineering firm, to prepare design plans for the construction of the 1.6-mile walking/biking trail (K&T Trail) section of the North Delaware Greenway. (*Id.* at 180a-232a.) In its plans, Stantec limited the construction of the K&T Trail to the boundaries of the 30-foot-wide K&T Railroad bed. (*Id.* at 180a-232a.) Utilization of the K&T Railroad bed for the construction of the K&T Trail is beneficial to the City because "it's already graded, it's close to the river[,] and it makes sense from a design standpoint and from a cost standpoint to take the trail along the K&T [Railroad bed] and not take it out into the river." (*Id.* at 573a.)

UAA is the owner of certain real property located along the Delaware River at 5250 Unruh Avenue, Philadelphia, Pennsylvania (Property). (*Id.* at 143a-47a.) The 30-foot-wide K&T Railroad bed runs across the Property. (*Id.* at 148a, 507a-08a.) The southeastern boundary of the Property extends into the Delaware River between Magee Avenue and Unruh Avenue past the Bulkhead Line to the former Port Warden's Line. (*Id.* at 143a, 148a, 503a-05a.) At the time that the City hired Stantec to prepare the plans for the construction of the K&T Trail, the City mistakenly believed that it owned the 30-foot-wide K&T Railroad bed located at the Property. (*Id.* at 514a-16a.) As a result, in 2012, UAA filed a quiet title action

2

against the City, alleging that the 30-foot-wide K&T Railroad bed, which at one time had been a railroad right-of-way, had been abandoned. (*Id.* at 149a-50a, 515a.) UAA and the City eventually resolved the quiet title action by stipulation, wherein the City acknowledged that it did not have any property interest in the 30-foot-wide K&T Railroad bed located at the Property. (*Id.* at 149a-62a, 515a-16a.)

Thereafter, in March 2017, the City enacted an ordinance authorizing, *inter alia*, the condemnation of certain parcels of land located along the Delaware River that contain the 30-foot-wide K&T Railroad bed for the construction of the K&T Trail. (*Id.* at 13a-14a.) The ordinance specifically authorizes the City to take property that extends into the Delaware River out to the Bulkhead Line. (*Id.* at 14a.) Subsequent thereto, on November 8, 2017, the City filed a declaration of taking (Declaration), condemning an 88-foot-wide strip of the Property consisting of approximately 0.6 acres that included the 30-foot-wide K&T Railroad bed, the riverbank, and the underwater land that extended to the Bulkhead Line (Condemned Property). (*Id.* at 9a-10a, 518a.) In its Declaration, the City indicated that the purpose of the taking was for "public recreation and public park use." (*Id.* at 9a.) On December 8, 2017, UAA filed preliminary objections[2] to the City's Declaration, arguing: (1) the taking of approximately 58 feet more of the Property than is necessary to construct the K&T Trail, including UAA's riverfront access, was excessive; and (2) the Declaration did not adequately establish the extent or effect

---

[2] Pursuant to Section 306(a)(1) and (a)(3) of the Code, 26 Pa. C.S. § 306(a)(1), (a)(3), a condemnee may, "[w]ithin 30 days after being served with notice of condemnation, . . . file preliminary objections to the declaration of taking" to challenge, *inter alia*, "[t]he declaration of taking." "In eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages." *In re Condemnation of Certain Props. and Prop. Interests for Use as Pub. Golf Course*, 822 A.2d 846, 850 (Pa. Cmwlth.), *appeal denied*, 839 A.2d 353 (Pa. 2003).

**(Footnote continued on next page…)**

of the taking because, although UAA owns the land to the former Port Warden's Line, the City is only taking to the Bulkhead Line.[3] (*Id.* at 21a-25a.) In response to UAA's preliminary objections, the City produced a declaration from Aparna Palantino (Palantino), the Deputy Commissioner for Capital Infrastructure and Natural Lands Management, Parks and Facilities, for the City's Department of Parks and Recreation, who explained the rationale for the City's decision to take beyond the 30-foot-wide K&T Railroad bed to the riverbank and the underwater land that extended to the Bulkhead Line:

> The City . . . determined that to provide a meaningful experience for K&T Trail users to connect with the Delaware River, it needed to prevent boats from docking at the [P]roperty by taking UAA's underwater property out to the Bulkhead Line. Doing so would also permit the City to construct any necessary underwater structures to prevent the riverbank from eroding and threatening the trail, if such a need arose in the future.

(*Id.* at 103a.)

The trial court held an evidentiary hearing on UAA's preliminary objections on April 23, 2018. At the hearing, UAA presented the testimony of Andrew Wade (Wade), the owner of UAA. (*Id.* at 498a.) Wade testified that UAA operates a waste and scrap business, which involves transporting waste through various modes of transportation, including railroads, barges, small break bulk ships, and trucks/tractor trailers. (*Id.* at 500a-01a.) Wade stated that UAA purchased the Property in April 1999 and currently uses it to handle and process universal waste, including mercury, nickel, cadmium, selenium, heavy metals, and other waste. (*Id.* at 498a, 501a, 520a-21a, 527a.) Wade explained that UAA was attracted to the Property

---

[3] UAA does not challenge the trial court's decision with respect to its preliminary objection regarding the extent or effect of the taking, and, therefore, we do not address such preliminary objection in any further detail in this opinion.

4

because it included not only waterfront property but also the land underneath the Delaware River up to the Port Warden's Line, and, therefore, UAA's ownership of the Property would give UAA the ability to utilize up to the pier headline to tie up ships and barges. (*Id.* at 500a, 503a-05a.) Wade admitted, however, that since UAA purchased the Property in April 1999, UAA has not used any type of ship to transport waste to the Property. (*Id.* at 527a.)

Robert Armstrong (Armstrong), Preservation and Capital Projects Manager for the City's Department of Parks and Recreation, also testified at the trial court's April 23, 2018 evidentiary hearing on UAA's preliminary objections. (*Id.* at 538a.) While he is not an engineer or a surveyor, Armstrong has been involved with approximately 20 park and trail projects while working as a project manager for the City's Parks and Recreation Department since 2005. (*Id.* at 540a, 559a-60a.) Armstrong has been the project manager for the K&T Trail since 2014. (*Id.* at 539a.) As the project manager for the K&T Trail, Armstrong interacts with surveyors, lawyers, grantors, funders, and design consultants/engineers. (*Id.* at 539a-40a.) Armstrong admitted that Stantec's design plans for the K&T Trail were limited to the K&T Railroad bed and did not include the construction of a park or any construction within the river to the Bulkhead Line at the Property. (*Id.* at 542a.) Armstrong explained, however, that the City decided to take more of the Property than just the 30-foot-wide K&T Railroad bed because,

> [i]n a redesign of this portion of the [P]roperty, it [was] seen that the shoreline was eroding significantly [into the K&T Railroad bed], and in order for [the City] to protect the trail, [its] asset, as well as [the] users of the trail, for the future [the City] need[ed] to protect the shoreline . . . [and] put rip[]rap [into the river] on the shoreline, which would enhance the shoreline in a way that would not continue to erode into the former [K&T R]ailroad right-of-way.

5

(*Id.* at 543a, 546a-48a, 550a-51a, 556a, 562a.) Armstrong further explained that, because the river had already significantly eroded into the K&T Railroad bed at the Property, the City would pile large river rocks on top of one another along the shoreline into the river and then wrap those river rocks with wire mesh to protect against future erosion of the K&T Trail. (*Id.* at 543a, 546a-51a, 564a.) Armstrong also explained that, while it initially planned to install riprap at a neighboring property, the City did not condemn more than the 30-foot-wide K&T Railroad bed at that neighboring property, because that neighboring property was not as eroded as the Property. (*Id.* at 544a-46a.) He indicated that certain properties have been "improved out to the shore headline," while others "have reverted significantly into the K&T . . . [R]ailroad bed," and the City is "trying to protect [its] investment by placing the rock in the areas just adjacent to the former [K&T R]ailroad [bed]." (*Id.* at 545a.) Armstrong also indicated that another reason that the City condemned more than the 30-foot-wide K&T Railroad bed at the Property was to create a riparian park where the users of the K&T Trail can connect with nature and use the river, as well as connect with the City's industrial heritage. (*Id.* at 554a-57a.)

By order dated March 19, 2019, the trial court overruled UAA's preliminary objections. In its accompanying opinion, the trial court concluded, *inter alia*, that UAA failed to demonstrate that the City abused its discretion—*i.e.*, that the City's taking was excessive. The trial court reasoned that the City presented evidence to establish that taking beyond the 30-foot-wide K&T Railroad bed to the Bulkhead Line was necessary to combat erosion issues and to protect the K&T Trail at the Condemned Property, which is a legitimate public purpose, and, despite adequate notice, UAA failed to rebut the City's evidence on this issue. UAA appealed the trial court's decision to this Court.

6

On appeal,[4] UAA argues that the trial court committed an error of law by overruling its preliminary objections and failing to revest title to the Condemned Property with UAA because the City's taking was excessive and arbitrary. More specifically, UAA contends that the City's commissioned plans, created years before the City filed its Declaration, conceded that a 30-foot-wide strip of land was adequate to construct the K&T Trail, and "[a]ny notion of a wider taking to support so-called erosion control is a concocted pretext, unsupported by any expert or the City's own plans." (UAA's Br. at 19.) UAA also contends that the City did not offer actual or competent evidence that taking to the Bulkhead Line was necessary to protect the K&T Trail from erosion, and the trial court's reliance on the testimony of a non-expert, Armstrong, and a hearsay affidavit, Palantino's declaration, to make such a conclusion was improper. In response, the City argues that, in light of the unrebutted evidence of its concerns about future erosion at the Condemned Property, the trial court properly concluded that UAA failed to meet its heavy burden of establishing that the City abused its discretion—*i.e.*, that the City's taking was excessive. The City further argues that the trial court correctly determined that it was not limited by its previously commissioned plans because it identified a legitimate public need—erosion control—to take beyond the 30-foot-wide K&T Railroad bed up to the Bulkhead Line.

"In its review of a decision to condemn property and the extent of the taking, the trial court is limited to determining whether the condemnor is guilty of fraud, bad faith, or has committed an abuse of discretion." *In re Pa. Tpk. Comm'n*, 84 A.3d 768, 776 (Pa. Cmwlth. 2014). "The burden of proving that the condemnor

---

[4] In eminent domain matters, our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Lang v. Dep't of Transp.*, 135 A.3d 225, 228 n.8 (Pa. Cmwlth.), *appeal denied*, 145 A.3d 729 (Pa. 2016).

has abused its discretion is on the objector or condemnee and the burden is a heavy one." *Id.* "[T]here is a strong presumption that the condemnor has acted properly." *Id.* "The sole limitation on the exercise of a condemnor's power is that it may not appropriate a greater amount of property than is reasonably required for the contemplated purpose." *Appeal of Waite*, 641 A.2d 25, 28 (Pa. Cmwlth.), *appeal denied*, 651 A.2d 543 (Pa. 1994). In other words, the "taking must not be excessive for the actual purpose of the public use." *In re Condemnation by Dep't of Transp. of Right-of-Way for State Route 0022, Section 034, in Twp. of Frankstown*, 194 A.3d 722, 735 (Pa. Cmwlth. 2018). "[T]he quantum of land acquired is, within reasonable limitations, a matter entirely within the condemnor's discretion and . . . the condemnor may consider future as well as existing necessities." *In re Twp. of Heidelberg for Footpath, Alleyway and Bridge Purposes*, 428 A.2d 282, 329-330 (Pa. Cmwlth. 1981) (*Heidelberg Twp.*) (citing *Truitt v. Borough of Ambridge Water Auth.*, 133 A.2d 797, 798 (Pa. 1957)). "Inasmuch[, however,] as property cannot constitutionally [be] taken by eminent domain except for public use, no more property may be taken than the public use requires—a rule which applies both to the amount of property and the estate or interest to be acquired." *Beaver Falls Mun. Auth. ex rel. Penndale Water Line Extension v. Beaver Falls Mun. Auth.*, 960 A.2d 933, 937 (Pa. Cmwlth. 2008) (*Beaver Falls)* (emphasis omitted) (citation omitted) (quoting *Cmwlth. v. Renick*, 342 A.2d 824, 827 (Pa. 1975)).

Here, Armstrong testified that, due to the significant erosion of the K&T Railroad bed at the Property, the City determined that it was necessary to take beyond the 30-foot-wide K&T Railroad bed into the river to the Bulkhead Line so that the City could install riprap along the shoreline into the river to prevent future erosion of the K&T Trail—*i.e.*, to prevent destruction of the City's asset. While he

8

may not be an expert in the field of trail design and/or erosion control, as the project manager for the K&T Trail, Armstrong had direct knowledge of the City's reasoning behind its decision to take into the river to the Bulkhead Line to prevent future erosion of the K&T Trail at the Condemned Property. UAA, the owner of the Property and the party who had the heavy burden of establishing that the City abused its discretion, did not present any evidence to establish that the City's concerns about erosion at the Property were invalid.[5] UAA also has not cited any legal authority for the proposition that the City needed to present expert testimony as to its reasons for taking to the Bulkhead Line, and we decline to conclude that the City was required to do so under the circumstances. Expert testimony may have been necessary if UAA had put the need for erosion control at the Property at issue—*i.e.*, presented evidence that erosion control measures were already present at the Property or that erosion control measures were not necessary at the Property—but, as noted above, UAA failed to do so. Given UAA's failure to rebut Armstrong's testimony, we find no error with the trial court's reasoning that the City established that taking beyond the 30-foot-wide K&T Railroad bed to the Bulkhead Line at the Property was

---

[5] At the conclusion of the trial court's April 23, 2018 evidentiary hearing on UAA's preliminary objections, UAA's counsel suggested that he could supplement the record with evidence that the neighboring property's erosion was more significant than the erosion at the Property. (R.R. at 591a.) In response, the trial court indicated that the hearing had been scheduled for quite some time, and UAA had sufficient opportunity to obtain discovery and to present evidence on the erosion issue but failed to do so. (*Id.* at 588a, 591a.) Despite the trial court's statement, UAA referenced facts and photographs in its supplemental brief in support of its preliminary objections that were not part of the evidentiary record, which UAA asserted would demonstrate that riprap has been present at the shoreline of the Property since UAA purchased the Property in April 1999. (*Id.* at 240a, 254a-56a.) Sometime thereafter, UAA filed a motion to supplement the record to include these facts and photographs. (*Id.* at 400a-16a.) The trial court denied UAA's motion to supplement the record. (*Id.* at 613a.)

9

necessary to combat erosion issues to protect the K&T Trail, a legitimate public purpose.

Relying on *Beaver Falls* and *Heidelberg Township*, UAA suggests that, despite the City's concerns with erosion of the K&T Trail at the Property, the City's taking is excessive simply because Stantec's plans conceded that the City needed only the 30-foot-wide K&T Railroad bed to construct the K&T Trail. UAA's reliance on *Beaver Falls* and *Heidelberg Township*, however, is misplaced, as both cases are distinguishable from the facts of this case. In *Beaver Falls*, the municipal authority decided to construct a water tank and ancillary facilities on a property adjacent to condemnees' property. *Beaver Falls*, 960 A.2d at 934. In connection therewith, the condemnees granted the municipal authority an easement over their property for the construction of an access road and the installation of a water line to the water tank. *Id.* In the easement agreement, the municipal authority agreed to stockpile excess soil from the excavation of the access road at a location directed by the condemnees. *Id.* at 934-35. During the construction of the access road, however, the municipal authority stockpiled the excess soil at a location on condemnees' property to which condemnees did not agree. *Id.* at 935. To avoid the cost of relocating the excess soil, the municipal authority filed a declaration of taking, condemning a 5-acre portion of condemnees' property. *Id.* at 936. The condemnees filed preliminary objections, challenging the municipal authority's taking as excessive. *Id.* The trial court sustained the condemnees' preliminary objections and set aside the taking, concluding that the taking "far exceeded the [amount of land] reasonably required for the project's purpose." *Id.* This Court affirmed the trial court's decision, holding that the municipal authority's reasonable needs—an access road and an area to stockpile the excess soil removed during excavation—were

10

served by the easement agreement, and, therefore, the taking of additional property was unnecessary and excessive. *Id.* at 936-40.

In this case, unlike in *Beaver Falls*, there was no prior easement agreement between the City and UAA that granted the City the right to utilize the 30-foot-wide K&T Railroad bed located at the Property for the K&T Trail. In addition, in *Beaver Falls*, the municipal authority took additional land to accomplish the exact same purposes that had already been addressed by the easement agreement between the municipal authority and the condemnees, whereas here, the City identified 2 additional needs for the land that it took beyond the 30-foot-wide K&T Railroad bed—erosion control and a riparian park. The City could not accomplish either of these needs within the 30-foot-wide K&T Railroad bed. As the trial court explained, "the City was free to take additional property for the [K&T T]rail provided a public need arose." (Trial Ct. Op. at 13.) Thus, *Beaver Falls* is distinguishable from the facts of this case.

In *Heidelberg Township*, the township proposed to condemn property for the construction of a footpath and/or alleyway and bridge for use by schoolchildren, who were required to walk to school along a busy highway. *Heidelberg Twp.*, 428 A.2d at 284. In its condemnation resolution, the township proposed to take an easement for a 5-foot-wide footpath over 2 adjacent properties separated by a creek. *Id.* at 284, 287. In its declaration of taking, however, the township condemned in fee simple a 54-foot-wide strip of land on one side of the creek and a 30-foot-wide strip of land on the other side of the creek. *Id.* at 284. The condemnees filed preliminary objections, arguing, *inter alia*, that the township's taking was excessive. *Id.* at 284, 287. The trial court permitted the township to amend its condemnation resolution to permit the taking of a fee simple interest to conform to its declaration

11

of taking. *Id.* at 284. The trial court concluded, however, that "a taking of land of a width varying from 54 feet to 30 feet was not so excessive for a footpath as to constitute an abuse of discretion in view of the [t]ownship's authority to condemn for future necessity." *Id.* at 287. On appeal, this Court reversed the trial court's decision on this issue, holding that "[i]n view of the fact that the [t]ownship once considered a footpath [5] feet in width adequate for a footpath, . . . a width [6] to [10] times greater for the same purpose is excessive and an abuse of the [t]ownship's discretion." *Id.*

Here, unlike in *Heidelberg Township*, where the township did not offer an explanation for its decision to increase the width of the footpath, the City provided 2 reasons—erosion control and a riparian park—for taking beyond the 30-foot-wide K&T Railroad bed. In other words, the City did not attempt to take more land for the same purpose but, rather, identified additional needs to justify taking beyond the 30-foot-wide K&T Railroad bed originally contemplated in Stantec's plans. Thus, *Heidelberg Township* is also distinguishable from the facts of this case.

For all of these reasons, we cannot conclude that the trial court committed an error of law by determining that UAA failed to demonstrate that the City's taking was excessive and an abuse of the City's discretion. Accordingly, we affirm the trial court's order.

_____
P. KEVIN BROBSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the :
City of Philadelphia of 0.59263 :
Acres in the City of Philadelphia, :
Philadelphia County, Pennsylvania :
Identified as Tax Map Number: :
111N24, Lot 12 : No. 561 C.D. 2019
  :
Property Address: 5250 Unruh :
Avenue, Philadelphia, PA 19135 :
  :
Appeal of: 5250 Unruh Avenue :
Associates :

# **O R D E R**

AND NOW, this 23rd day of July, 2020, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge